ORiGinAL

NAME **THELLAS SANDERS**

PRISON NUMBER           **AC2804**

CURRENT ADDRESS OR PLACE OF CONFINEMENT
1605 E. MAIN St.

CITY, STATE, ZIP CODE SAyrE, OK. 73668



FILED

SEP 0 4 2012

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                        DEPUTY

2254 ___ / 1983
**FILING FEE PAID**
Yes_____   No ✓
**IFP MOTION FILED**
Yes_____   No ✓
**COPIES SENT TO**
Court ✓   ProSe

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

Civil No   1 2CV2 1 8 1 WQH NLS

(TO BE FILLED IN BY CLERK OF U.S. DISTRICT COURT)

(FULL NAME OF PETITIONER)
**THELLAS SANDERS**          **PETITIONER**

v.

(NAME OF WARDEN, SUPERINTENDENT, JAILOR, OR AUTHORIZED
PERSON HAVING CUSTODY OF PETITIONER [E.G., DIRECTOR OF THE
CALIFORNIA DEPARTMENT OF CORRECTIONS])
**STATE OF CALIFORNIA**
                    **RESPONDENT**
and

The Attorney General of the State of
California, Additional Respondent.

### PETITION FOR WRIT OF HABEAS CORPUS

UNDER 28 U.S.C. § 2254
BY A PERSON IN STATE CUSTODY

1. Name and location of the court that entered the judgment of conviction under attack:
   **SUPERIOR COURT(RIVERSIDE) STATE OF CALIFORNIA**
   **4100 MAIN ST. RIVERSIDE,CA**

2. Date of judgment of conviction: **JANUARY   15,2012**

3. Trial court case number of the judgment of conviction being challenged: **BAF006658**

4. Length of sentence: **11 YEARS**

CIV 68 (Rev. Jan. 2006)                                                    CV

5. Sentence start date and projected release date: **5-26-09    1-26-18**

6. Offense(s) for which you were convicted or pleaded guilty (all counts): **CRIMINAL THREATS DOMESTIC VIOLENCE**

7. What was your plea? (CHECK ONE)
   (a) Not guilty        ☒
   (b) Guilty            ☐
   (c) Nolo contendere   ☐

8. If you pleaded not guilty, what kind of trial did you have? (CHECK ONE)
   (a) Jury              ☒
   (b) Judge only        ☐

9. Did you testify at the trial?
   ☐ Yes ☒ No

## DIRECT APPEAL

10. Did you appeal from the judgment of conviction in the **California Court of Appeal**?
    ☒ Yes ☐ No

11. If you appealed in the **California Court of Appeal**, answer the following:
    (a) Result: **DENIED**

    (b) Date of result (if known): **MARCH 26,2012**

    (c) Case number and citation (if known): **D060009,E050154**
    (d) Names of Judges participating in case (if known): **NARES,ACTING P.J. AARON,J McDONALD,J**

    (e) Grounds raised on direct appeal: **EXCLUSION OF EVIDNECE,LIMITING CROSS EXAMINATION,ABUSING DISCRETION BY DENYING APPELLANTS(16 YEAR OLD PRIOR STRIKE) INVENTATION(P.C. 1385)**

12. If you sought further direct review of the decision on appeal by the **California Supreme Court** (e.g., a Petition for Review), please answer the following:
    (a) Result: **DENIED**

    (b) Date of result (if known): **5-9-2012**

    (c) Case number and citation (if known): **D060009**

    (d) Grounds raised: **ILLEGAL ENHANCEMENT VIOLATION,CROSS EXAMINATION EXCLUSION, EVIDENCE EXCLUSION.**

CIV 68 (Rev. Jan. 2006)
cv

**13.** If you filed a petition for certiorari in the **United States Supreme Court**, please answer the following with respect to that petition:
    (a)  Result:

    (b)  Date of result (if known):

    (c)  Case number and citation (if known):

    (d)  Grounds raised:

## COLLATERAL REVIEW IN STATE COURT

**14.** Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions (e.g., a Petition for Writ of Habeas Corpus) with respect to this judgment in the **California Superior Court**?
☐ Yes ☒ No

**15.** If your answer to #14 was "Yes," give the following information:

    (a)  **California Superior Court** Case Number (if known):

    (b)  Nature of proceeding:

    (c)  Grounds raised:

    (d)  Did you receive an evidentiary hearing on your petition, application or motion?
       ☐ Yes ☐ No

    (e)  Result:

    (f)  Date of result (if known):

**16.** Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions (e.g., a Petition for Writ of Habeas Corpus) with respect to this judgment in the **California Court of Appeal**?
☐ Yes ☒ No

CIV 68 (Rev. Jan. 2006)

cv

17. If your answer to #16 was "Yes," give the following information:

    (a) **California Court of Appeal** Case Number (if known):

    (b) Nature of proceeding:

    (c) Names of Judges participating in case (if known)

    (d) Grounds raised:

    (e) Did you receive an evidentiary hearing on your petition, application or motion?
       ☐ Yes ☐ No

    (f) Result:

    (g) Date of result (if known):

18. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions (e.g., a Petition for Writ of Habeas Corpus) with respect to this judgment in the **California Supreme Court**?
☐ Yes ☒ No

19. If your answer to #18 was "Yes," give the following information:

    (a) **California Supreme Court** Case Number (if known):

    (b) Nature of proceeding:

    (c) Grounds raised:

    (d) Did you receive an evidentiary hearing on your petition, application or motion?
       ☐ Yes ☐ No

    (e) Result:

    (f) Date of result (if known):

**20.** If you did *not* file a petition, application or motion (e.g., a Petition for Review or a Petition for Writ of Habeas Corpus) with the <u>**California Supreme Court**</u>, containing the grounds raised in this federal Petition, explain briefly why you did not:

## COLLATERAL REVIEW IN FEDERAL COURT

**21.** Is this your **first** federal petition for writ of habeas corpus challenging this conviction?
☒ Yes ☐ No     (IF "YES" SKIP TO #22)
 (a) If no, in what federal court was the prior action filed?
  (i) What was the prior case number?
  (ii) Was the prior action (CHECK ONE):
     Denied on the merits?          ☐
     Dismissed for procedural reasons? ☐
  (iii) Date of decision:
 (b) Were any of the issues in this current petition also raised in the prior federal petition?
   ☐ Yes ☐ No
 (c) If the prior case was denied on the merits, has the Ninth Circuit Court of Appeals given you permission to file this second or successive petition?
   ☐ Yes ☐ No

---

<u>CAUTION:</u>
- <u>**Exhaustion of State Court Remedies:**</u>  In order to proceed in federal court you must ordinarily first exhaust your state court remedies as to each ground on which you request action by the federal court.  This means that even if you have exhausted some grounds by raising them before the California Supreme Court, you must first present *all* other grounds to the California Supreme Court before raising them in your federal Petition.
- <u>**Single Petition:**</u>  If you fail to set forth all grounds in this Petition challenging a specific judgment, you may be barred from presenting additional grounds challenging the same judgment at a later date.
- <u>**Factual Specificity:**</u>  You must state facts, not conclusions, in support of your grounds.  For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do.  A rule of thumb to follow is — state who did exactly what to violate your federal constitutional rights at what time or place.

---

## GROUNDS FOR RELIEF

22. **State *concisely* every ground on which you claim that you are being held in violation of the constitution, law or treaties of the United States. Summarize *briefly* the facts supporting each ground.** (e.g. what happened during the state proceedings that you contend resulted in a violation of the constitution, law or treaties of the United States.) If necessary, you may attach pages stating additional grounds and/or facts supporting each ground.

    **(a) GROUND ONE:** The trial court erred and violated appellants 6th amendment, through to the fourteeth by excluding evidence limiting cross examination not allowing defense to impeach witness demonstrating motive to falsely accuse appellant. This evidence was highly relevant,exposing bias and lack of credibility and was'nt inadmissable. PC 352,452,453, please view evidence code 110(a) (b)(c).

    **Supporting FACTS:** (RT.pp.37-39)On october 6,2009 appellant moved the trial court court in limine to introduce documents filed by complaining witness in divorce/civil actions in order to demonstrate witness lack of credibility bias against appellant. And her motive to lie. The trial courts excluded the dcouments under evidence code sedtion 352 finding it to be not sufficiently relevant, time consuming,confusing, and extremely derivative evidence code 452,453, provided judicial nótice can be taken of documents filed in court(People v Carter 2005 36 cal 4th 1114,1149. (People v Rowland 1992 4 cal 4th 283,264)(RT.~~20-43~~ 218-220)The documents filed proper by witness contained an act of perjury, stating appellant committed fraud in order to gain favor and misled civil/family law courts(RT.pp.225-227)The complaining witness actually orchestrated,reviewed,and was in agreement so appellant and witness herself could get favorable loan rates under the first time home buyers program.The documents demonstrated motive to falsely accuse appellant of domestic violence so it would be easier to obtain appellants property in a default judgement when appellant could'nt appear for court due to incarceration. The family courts granted exclusive use of the beaumont property but the people and complaining witness displayed to the jury by the court as a full(100%)owership order by family court, displaying the notion that rather the complaining witness testified or not it did'nt make a difference to her,but all was false and misleading information.(see minute order RID230569 also on 9-3-09 displayed no such action that the people fabricated on(TT.pp.207,line 20.(RT.pp.204-223)The trial courts forbade appellant to inquire of witness on cross examination as to whether she lied in the documents in the effort to obtain appellants property.(RT.pp.225-227)Although appellant could use documents formimpeachment if witness lied about family courts awarding her appellants property,or her awareness to her knowledge of the home purchase,but her answers were in  the affirative therefore appellant could'nt ask her directly if witness lied under penalty of perjury in the family/civil courts and every time defense attempted to effectively cross examine complaining witness he was objected and forbid.(see attached)

    **Did you raise GROUND ONE in the California Supreme Court?**

    ☐ Yes ☐ No.

        If yes, answer the following:

        (1)   Nature of proceeding (i.e., petition for review, habeas petition):

        (2)   Case number or citation:

        (3)   Result (attach a copy of the court's opinion or order if available):

1   The exercise of the trial courts discretion ot restrict cross examination

2   violates the sixth amendment to the U.S. Constitution. Delaware v Aadsall (1986)

3   475 U.S. 673,680   1065 S CT 1431,   896 Ed 2d 674. Such a constitutional violation

4   requires reversal of the conviction unless the error was harmless beyond a reason-

5   able doubt.(RT.pp.30-43) People v Bsauta,supra  94 cal app 4th at. pp. 387-389.)

6   The sixth amendment guarantees the accussed in a criminal prosecution applies the

7   right to be confronted with witness against him or her and this right is binding

8   on the states through the fourteenth amendment. (Pointer v Texas (1965) 380 U.S.400

9   85 S CT 1065  13 L Ed 2d 923). The excluded documents were Riverside county case

10  #RID230569,RIV016744,RIC527895,and the county of San Bernardino, FAMSS806329,

11  Argonaut Ins.  Exchange v. Industrial Acc.Com.) 120 cal app 2d 145,152-153.) More-

12  over let the record reflect(RT.pp.30-43, 208-216.) There"s no support for undo time

13  consumtion because appellant assembled,marked,and presented all evidence for intro-

14  duction to cross examine witness (Jennings v. Superior Court (1967) 66 cal 2d 867,

15  877-881.)(Id.at.pp.872-873.) Complaining witness strongly exposed fabrication

16  creativity,and maliciousness in trail court(RT.pp.268-199 381-386.) Having prosec-

17  tion take pictures of my right hand exposing a scar (alledgedly happining New Years

18  (Jan 1, 2009) in order to manipuate the courts and or jury providing (time and date)

19  with what came across as very believable testimony of an incident involing the

20  appellant and a firearm. Appellant defense witness(Dr.Pibe) an E.R.Doctor was

21  subpeanod and made testimony he did a wound check on that same hand on November 9,

22  2005. After appellant injured hand and was treated days earlier(RT.pp.554-560.)

23  The injury occured more than a year before appellant met witness. The courts having

24  this knowlege seeing the character and maliciousness resulting in professionslism

25  having disreguard for the law. The appellant should have been allowed to present

26  all of any evidence. Hearsay from victim of phsical violence code 1370. The judge

27  determine trust worthiness to the statement considering these factors; Whether the

28  declerant has a bias or motive for fabricating the statement and the extent of any.

## ATTACH—SUPPORTING FACTS

1  litigation in which the declerant was interested;whether the statements are

2  corroborated by evidence other than statements that are admissable only under this

3  section. The statement is admissable only if the proponent"makes Known" to the

4  adverse party the intention to offer the statement and the particular of the stat-

5  ement. The constitutibality of this provision was upheld in People v. Hernadez

6  (1999) 71 cal 4th 417, 83 CR 2d 747. On June 15,2010 the complaining witness

7  accomplished her goal securing the interspousal tranfer deed from appellant.

8  1 ]year 20 days afterrthe arrest 5 months after the conviction of appellant.

9  On October 14, 2009 during trial appellant again raised issue toppresent documents

10  for impeachment because prosecution asked if witness would benifit if appellant

11  was prosecuted; witness Shikira Sanders responded,"NO" (RT.pp.204-223).

12  appellant

**(b)** GROUND TWO: The trial court abused it's discretion by denying appellant invitation to dismiss his 16 year old prior strike pursuant to penal code section 1385. (people v. Superior Court Romero) 1996 13 cal 4th 497,504.)

**Supporting FACTS**: The trial court erred by refusing the appellants request to exercise it's discretion to dismiss the strike prior because in light of the nature and circumstances of most of appellants prior convictions and particular of appellants background character, and prospects,appellant fell outside the spirit of the three strikes law and thus he should have been treated as if he did'nt suffer the 16 year old prior. convictions.and parole violations are history, they with the exception of the 1993 conviction,and 2002 firearms conviction are non-violent,and a 1998 forgery. Appellant had been employed as a truck driver,married,participated in school activities provided for complaining witness children including his own even purchasing property. (RT.pp.113.) All was mentioned in trial and shows and proves appellant made strides in turning his life around. Appellant discharge parole and should be treated as if his prior never happened.(People v, superior court(Howard) 1986  69 cal 2d 499,505.) (People v. Myers)1999  69 cal app 4th5305,309)(People v. Williams 1998 17 cal 4th 148,162-163).In exercising it's discretion under section 1385. The court should consider the nature and cirumstances of the defendants current crime prior convictions and particulars of his or her back ground character and propects.(people v. philpot 2004 122 cal app 4th 893,906 citing Williams Supra, 17 cal 4th 148,161;(also view)t.t.739-742,and character,letters attached. Having knowledge that the complaining witness was lying and testimony was misleading the courts should've taken appropiate action or atleast dismissed charges under "moral turpitude". View Horrabin v. Des Moines, Iowa 549,199 N.W. 988, 38 ALR 544. Offenses involving moral turpitude. Inherently wicked naturally evil,as judged by the sense of a civilized community: Illegal from the very nature of the transaction upon principles of moral natural and public law; immoral in it's nature and injurious in it's consequences without regard to the fact of it's being noticed or punished by the law of the state.(view)10 ALR 2d 38. In re Cruikshank, 47 cal app 496, 190 P 1038(2d dist 1920).

**Did you raise** GROUND TWO **in the California Supreme Court?**

☑Yes ☐ No.

If yes, answer the following:

(1)  Nature of proceeding (i.e., petition for review, habeas petition): Denied

(2)  Case number or citation: D060009, BAF006658

(3)  Result (attach a copy of the court's opinion or order if available):

**23.** Do you have any petition or appeal **now pending** in any court, either state or federal, pertaining to the judgment under attack?
☐ Yes   ☒ No

**24.** If your answer to #23 is "Yes," give the following information:

(a)  Name of Court:

(b)  Case Number:

(c)  Date action filed:

(d)  Nature of proceeding:

(e)  Name(s) of judges (if known):

(f)  Grounds raised:

(g)  Did you receive an evidentiary hearing on your petition, application or motion?
☒ Yes   ☐ No

**25.** Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

(a)  At preliminary hearing . . . . . . . . **NITHIN REDDY 135 N.ALESSANDRO BANNING,CA 92220**

(b)  At arraignment and plea . . . . . . . **NITHIN REDDY 135 N.ALESSANDO BANNING,CA 92220**

(c)  At trial . . . . . . . . . . . . . . . . . . . **MICHEAL J. McCALLEF 4200 ORANGE ST. RIVERSIDE,CA 92501**

(d)  At sentencing . . . . . . . . . . . . . . **STAND IN ATTORNEY, SAME ADDRESS**

(e)  On appeal . . . . . . . . . . . . . . . . . **DENISE RUDASILL 840 17TH ST. #212 SAN DIEGO,CA 92101**

(f)  In any post-conviction proceeding . **NONE**

(g)  On appeal from any adverse ruling in a post-conviction proceeding:  **NONE**

CIV 68 (Rev. Jan. 2006)

cv

26. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?
    ☒Yes  ☐No

27. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
    ☐Yes  ☒No

    (a) If so, give name and location of court that imposed sentence to be served in the future:

    (b) Give date and length of the future sentence:

    (c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
        ☐Yes  ☐No

28. Consent to Magistrate Judge Jurisdiction

   In order to insure the just, speedy and inexpensive determination of Section 2254 habeas cases filed in this district, the parties may waive their right to proceed before a district judge and consent to magistrate judge jurisdiction. Upon consent of all the parties under 28 U.S.C. § 636(c) to such jurisdiction, the magistrate judge will conduct all proceedings including the entry of final judgment. The parties are free to withhold consent without adverse substantive consequences.

   The Court encourages parties to consent to a magistrate judge as it will likely result in an earlier resolution of this matter.  If you request that a district judge be designated to decide dispositive matters, a magistrate judge will nevertheless hear and decide all non-dispositive matters and will hear and issue a recommendation to the district judge as to all dispositive matters.

   You may consent to have a magistrate judge conduct any and all further proceedings in this case, including the entry of final judgment, by indicating your consent below.

Choose only one of the following:

☒ Plaintiff consents to magistrate judge jurisdiction as set forth above.

**OR**

☐ Plaintiff requests that a district judge be designated to decide dispositive matters and trial in this case.

29. Date you are mailing (or handing to a correctional officer) this Petition to this court: 8·30·12

CIV 68 (Rev. Jan. 2006)

-11-

cv

Wherefore, Petitioner prays that the Court grant Petitioner relief to which he may be entitled in this proceeding.

(PRO·PER) _____

SIGNATURE OF ATTORNEY (IF ANY)

I declare under penalty of perjury that the foregoing is true and correct.  Executed on

8·13·12

(DATE)                                    SIGNATURE OF PETITIONER

CIV 68 (Rev. Jan. 2006)

-12-

cv

ORIGINAL

Records

Evidence

field in Court

ORIGINAL

"Exhibit R"

# UNIFORM TRADE CERTIFICATE

(U.C.C. Sections 3-104; 3-202; House Joint Resolution 192)

ISSUING AGENT(S): SHIKIRA SANDERS

DATE: 06/02/09

A PROMISSORY DOCUMENT FOR VALUABLE CONSDIERATION toward the payment of:
**Mortgage Payment: 811 Master Way; Beaumont, CA 92223.**

**1. DECLARATION:**
   This certificate serves as notice to the receiver or bearer of a promise to pay the demand for payment made by **AMERICAN ONE FINANCE**, in the County of Riverside in and for the State of California.

**2. TERMS:**
   This certificate is payable upon demand by the bearer listed at such time as true money as defined by law, Lane v. Railey, 280, Ky, 319, 133 S.W..2d 74, 79, 81, has been returned to public circulation, or, at such time as the bearer agrees to effectuate a negotiable agreement with the issuer for performance of terms no earlier than _December 02_, 2009, and no later than January 01, 2010, in compliance with the C.F.R. Independent Task Force's schedule of operations.

**3. VALUE:**

**$8,482,74.00**

**4. SURETY:**
   This certificate is secured against loss by the proscriptive earnings, income, wages, profits and/or assets of the issuer that are not held in trust and shall indemnify the issuer against all early claims made by the bearer.

**5. NEGOTIABLITY:**
   This certificate is negotiable tender pursuant to the above listed code sections and is effectuated by signed acknowledgement by the bearer and return of copy to the issuer. Failure to acknowledge this tender of payment within 14 calendar days from date of receipt shall be considered a release of all debt claims made by the bearer.

**PRINT**                          **SIGN**              **DATE**

SHIKIRA SANDERS          _signature_          6/2/09
Promisor

_____

Promisee

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

SEP 24 2009
J. Dorame

9/28

1  | SHIKIRA SANDERS
2  | 811 Master Way
3  | Beaumont, CA 92223
4  | *In propria persona*
5  |
6  |
7  |
8  |                          STATE OF CALIFORNIA
9  |                       COUNTY OF SAN BERNARDINO
10 | SHIKIRA SANDERS,                    ) Case No.: RIC527895
11 |              Plaintiff,             ) SUPPLEMANTAL: EX PARTE
   |                                     ) PETITION FOR WRIT OF MANDATE AND ORDER
12 |     vs.                             ) REQUIRING DEFENDANT'S CONVEYANCE OF REAL
   |                                     ) PROPERTY BY INTER-SPOUSAL TRANFER DEED.
13 | THELLAS SANDERS III,                ) (C.C.P. §1085)
   |                                     ) Dept. 07 2
14 |              Defendant              ) Date: 9.28.09
   |                                     ) Time: 830
15 | TO THE HONORABLE JUDGE OF THE ABOVE-ENTITLED COURT:

16 |     Plaintiff in this action petitions this court to grant writ of mandate and make
17 | order requiring defendant to comply with court's judgment in case #RID230569, to
18 | transfer real property, herein described as 811 Master Way, Beaumont, CA 92223, filed
19 | 09/23/09, the court having granted sole control of property to Plaintiff, as the
20 | defendant is without capacity to manage the asset, being now in the custody of the
21 | Riverside County Sherriff's Department. Plaintiff makes this petition on the following
22 | grounds:

23 |     1. Defendant refuses to sign marital settlement agreement.
24 |     2. Defendant has no capacity to manage asset.
25 |     3. Plaintiff is awarded property.
26 |     4. Plaintiff makes mortgage payments.
27 |     5. Plaintiff makes property tax payments.
28 | WHEREFORE, petitioner prays the court to issue mandate and make following order:

                          [Summary of pleading] - 1

1.  That defendant sign and effectuate Inter-spousal Transfer Deed.

2.  That court authorize recordation of Inter-spousal Transfer Deed.

**POINT OF AUTHORITY**

California Code of Civil Procedure, Section 1085 provides:

*"It may be issued by any court...to any inferior tribunal, board, or person, to compel the performance of an act which the law specially enjoins, as a duty resulting from an Office, trust, or station; or to compel the admission of a party to the use and enjoyment of a right...to which he (or she) is entitled, and from which he (or she) is unlawfully precluded..."*

**VERIFICATION**

I swear under penalty of perjury the foregoing to be true and correct to the best of my knowledge.

Dated September 24, 2009

SHELLRA SANDERS

**ORDER**

WHEREAS, IT IS SO ORDERED BY THIS COURT, that the Defendant, named herein, Thellas Sanders III, comply with the order to sign and effectuate Inter-spousal Deed Transfer in compliance with award of the court in case # RID230569, pursuant to California Civil Code of Procedure, Section 1085.

Further, that the Riverside County Recorder's Office permit recordation of said deed of transfer.

Order made effective this _____ day of _____, 2009

PRINT                          SIGN

_____

THE PRESIDING JUDICIAL OFFICER IN THIS COURT.

[Summary of pleading] - 2

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

JUN 02 2009
J. Dorame

CDH

1   SHIKIRA SANDERS

2   811 Master Way

3   Beaumont, CA 92223

4   In propria persona

5

6

7

8

9

10

11

12

13                        STATE OF CALIFORNIA

14                        COUNTY OF RIVERSIDE

15                                      Case No.:   RIC527895

16   SHIKIRA SANDERS,
                                        COMPLAINT TO QUIET TITLE
17              Plaintiff,              (C.C.P. 760.020; C.S.C. Art. 14 §3)

18        vs.

19   THELLAS SANDERS, III; AMERICAN ONE

20   FINANCE,

21              Defendant

22   TO THE HONORABLE JUDGE OF THE ABOVE-ENTITLED COURT:

23      Comes now the Plaintiff, Shikira Sanders, a lawful an indigenous occupant

24   of these territories and resident in the State of California, under

25   protection of the 14th Amendment, all rights reserved, who, for causes of

Summary of Pleading - 1

1 action listed herein, make this complaint to quiet title and thereby enforce

2 an equitable claim against the real property herein described and commonly

3 known as:

4 811 Master Way, Beaumont, CA 92223

5 Lot 54, Tract 29183

6 *hereafter referred to as "the property".

7 Plaintiff asserts a lawful claim to possession, easements and title

8 affecting the property and makes the following allegation thereunto:

9 **GENERAL ALLEGATIONS:**

10 1. That I, Shikira Sanders, am the lawful wife of the owner of record,

11 Thellas Sanders, III, as such, have capacity to sue the defendant (see

12 exhibit 1: Marriage license).

13 2. That the property is included as the subject matter in the following

14 related cases: i. #RIV016744, wherein the property is subject to a

15 judicial property control order (see exhibit 2: DV-100); ii.

       Item 12

16 #RID230569, wherein the property is subject to notice of pending

17 action/lis pendens (see exhibit 3: Lis Pendens).

18 3. That I, Shikira Sanders, have established a substantial equitable claim

19 against the property by way of capital investment monies, inclusive of

20 but not limited to, the following: i. down payment of $8,000.00 (see

21 exhibit 4: Bank document A); ii. mortgage payments in the sum of

22 $8,482.74 (see exhibit 5: Uniform Trade Certificate B); iii.

23 Mechanic's lien (see exhibit 6: Document # 2009-0245302).

24 4. That defendant committed an act of what appears to be real estate fraud

25 listing and misrepresenting himself as an "unmarried man" and

1  subsequently qualify for first-time homebuyers benefits and thereafter

2  defraud the spouse of her entitlements to community property (see

3  exhibit 7: Loan Document Worksheet, page 1).

4                              **VERIFICATION**

5     I swear under penalty of perjury the foregoing to be true and correct

6  to the best of my knowledge.

7

8                                    Dated this 1st day of June, 2009

9                                    SHIKIRA SANDERS

10  *
   *
11  *
   *
12  *
   *
13  *
   *
14  *
   *
15  *
   *
16  *
   *
17  *
   *
18  *
   *
19  *
   *
20  *
   *
21  *
   *
22  *
   *
23  *
   *
24  *
   *
25  *

Summary of Pleading - 3

3

PPOINTS AND AUTHORITIES

The following are points and authorities in support of this motion:

AS TO QUIET TITLE:

California Code of Civil Procedure, Section 760.020 provides that:

"(a) an action may be brought under this chapter to establish title against adverse claims to real or personal property or interest therein".

Further, the California Supreme Court (Castro v. Barry 79, Cal. 443.) has ruled that:

"Quiet title is for the purpose of stopping the mouth of a person who has asserted or is asserting a claim to property held by the Plaintiff".

AS TO RIGHTS OF LIENHOLDERS:

The California State Constitution, Article 14, Section 3 provides that:

"Mechanics, persons furnishing materials, artisans, and laborers of every class, shall have a lien upon the property upon which they have bestowed labor or furnished material for the value of such labor done and material furnished; and the Legislature shall provide, by law, for the speedy and efficient enforcement of such liens".

ORIGINAL #1

**DV-100** | **Request for Order**

Clerk stamps date here when form is filed.

BHP

F I L E D
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

MAY 15 2009

T. Mateox

MAY 21 2009

**(1) Your name** (person asking for protection):
SHIKIRA SANDERS

Your address *(skip this if you have a lawyer):* *(If you want your address to be private, give a mailing address instead):*
811 Master Way
City: Beaumont          State: CA     Zip: 92223
Your telephone number *(optional):*  909-425-8206

Your lawyer *(if you have one): (Name, address, telephone number, and State Bar number):*
In propria persona

Fill in court name and street address:
Superior Court of California, County of

Superior Court of California
County of Riverside
4175 Main Street
Riverside, CA 92501

BSM
JUN 1 0 2009

Clerk fills in case number when form is filed.

Case Number: 016744

RIV
CWMF RID  230569 F

**(2) Name of person you want protection from:**
THELLAS SANDERS, III

Description of that person: Sex: ☑ M  ☐ F  Height: 5'-8"
Weight: 200   Race: BLACK   Hair Color: BLACK
Eye Color: brown   Age: 34   Date of Birth: 01-07-75

**(3) Besides you, who needs protection?** *(Family or household members):*

| Full Name | Age | Lives with you? | How are they related to you? |
|---|---|---|---|
| Elijah Jaleel Lynk (Disabled | 10 | ☑ Yes ☐ No | son |
| Aleem Lynk | 07 | ☑ Yes ☐ No | son |
| Yaminah Lynk | 04 | ☑ Yes ☐ No | daughter |
|  |  | ☐ Yes ☐ No |  |

☐ *Check here if you need more space. Attach Form MC-020 and write "DV-100, Item 3—Protected People" by your statement. NOTE: In any item that asks for Form MC-020, you can use an 8 1/2 x 11-inch sheet of paper instead.*

**(4) What is your relationship to the person in (2)?** *(Check all that apply):*

a. ☑ We are now married or registered domestic partners.
b. ☐ We used to be married or registered domestic partners.
c. ☑ We live together.
d. ☐ We used to live together.
e. ☐ We are relatives, in-laws, or related by adoption *(specify relationship):* _____
f. ☐ We are dating or used to date.
g. ☐ We are engaged to be married or were engaged to be married.
h. ☐ We are the parents together of a child or children under 18:
   Child's Name: _____ Date of Birth: _____
   Child's Name: _____ Date of Birth: _____
   Child's Name: _____ Date of Birth: _____
   ☐ *Check here if you need more space. Attach Form MC-020 and write "DV-100, Item 4h" by your statement.*
i. ☐ We have signed a Voluntary Declaration of Paternity for our child or children. *(Attach a copy if you have one.)*



**This is not a Court Order.**

Judicial Council of California, www.courtinfo.ca.gov
Revised July 1, 2007, Mandatory Form
Family Code, § 6200 et seq.

**Request for Order**
**(Domestic Violence Prevention)**

DV-100, Page 1 of 4

American LegalNet, Inc.
www.FormsWorkflow.com

Case Number: **016744**
RIV

Your name: SHIKIRA SANDERS

**(5)** **Other Court Cases**
a. Have you and the person in **(2)** been involved in another court case?   ☐ No  ☑ Yes
   If yes, where? County: San Bernardino _____ State: California _____
   What are the case numbers? *(If you know):* FAMSS806329 _____
   What kind of case? *(Check all that apply):*
   ☐ Registered Domestic Partnership  ☑ Divorce/Dissolution  ☐ Parentage/Paternity  ☐ Legal Separation
   ☐ Domestic Violence  ☐ Criminal  ☐ Juvenile  ☐ Child Support  ☐ Nullity  ☐ Civil Harassment
   ☐ Other *(specify):* _____
b. Are there any domestic violence restraining/protective orders now (criminal, juvenile, family)?
   ☑ No  ☐ Yes  *If yes, attach a copy if you have one.*

## What orders do you want? Check the boxes that apply to your case. ☑

**(6)** ☒ **Personal Conduct Orders**
   I ask the court to order the person in **(2)** not to do the following things to me or any of the people listed in **(3)**:
   a. ☑ Harass, attack, strike, threaten, assault (sexually or otherwise), hit, follow, stalk, molest, destroy
        personal property, disturb the peace, keep under surveillance, or block movements
   b. ☑ Contact (either directly or indirectly), or telephone, or send messages or mail or e-mail
        *The person in **(2)** will be ordered not to take any action to get the addresses or locations of any protected
        person, their family members, caretakers, or guardians unless the court finds good cause not to make the order.*

**(7)** ☒ **Stay-Away Order**
   I ask the court to order the person in **(2)** to stay at least _88,000_ yards away from *(check all that apply):*
   a. ☑ Me                              e. ☑ The children's school or child care
   b. ☑ The people listed in **(3)**     f. ☑ My vehicle
   c. ☑ My home                         g. ☐ Other *(specify):* My place of worship.
   d. ☑ My job or workplace

   If the person listed in **(2)** is ordered to stay away from all the places listed above, will he or she still be able
   to get to his or her home, school, job, or place of worship?  ☑ Yes  ☐ No  *(If no, explain):* _____

**(8)** ☒ **Move-Out Order**
   I ask the court to order the person in **(2)** to move out from and not return to *(address):*
   811 Master Way; Beaumont, CA 92223
   I have the right to live at the above address because *(explain):* 1. I am the lawful wife of the Defendant.
   2. I have legal residency. 3. I helped purchase the home with personal monies and have a lawful claim

**(9)** ☐ **Child Custody, Visitation, and Child Support**
   I ask the court to order child custody, visitation, and/or child support. *You must fill out and attach
   Form DV-105.*

**(10)** ☑ **Spousal Support**
   *You can make this request only if you are married to, or are a registered domestic partner of, the person in **(2)**
   and no spousal support order exists. To ask for spousal support, you must fill out, file, and serve Form FL-150
   before your hearing.*

This is not a Court Order.

6

Your name: SHIKIRA SANDERS

Case Number: **016744**
RIV

## What orders do you want? Check the boxes that apply to your case. ☑

**(11)** ☑ **Record Unlawful Communications**
I ask for the right to record communications made to me by the person in (2) that violate the judge's orders.

**(12)** ☑ **Property Control**
I ask the court to give *only* me temporary use, possession, and control of the property listed here:
811 Master Way; Beaumont, CA 92223

**(13)** ☐ **Debt Payment**
I ask the court to order the person in (2) to make these payments while the order is in effect:
☐ *Check here if you need more space. Attach Form MC-020 and write "DV-100, Item 13—Debt Payment"
by your statement.*
Pay to: _____ For: _____ Amount: $ _____ Due date: _____
Pay to: _____ For: _____ Amount: $ _____ Due date: _____
Pay to: _____ For: _____ Amount: $ _____ Due date: _____

**(14)** ☑ **Property Restraint**
I am married to or have a registered domestic partnership with the person in (2). I ask the judge to order that the person in (2) not borrow against, sell, hide, or get rid of or destroy any possessions or property, except in the usual course of business or for necessities of life. I also ask the judge to order the person in (2) to notify me of any new or big expenses and to explain them to the court.

**(15)** ☑ **Attorney Fees and Costs**
I ask that the person in (2) pay some or all of my attorney fees and costs.
*You must complete and file Form FL-150, Income and Expense Declaration.*

**(16)** ☐ **Payments for Costs and Services**
I ask that the person in (2) pay the following:
*You can ask for lost earnings or your costs for services caused directly by the person in (2) (damaged property, medical care, counseling, temporary housing, etc.). You must bring proof of these expenses to your hearing.*
Pay to: R E M _____ For: _____ Amount: $ 935
Pay to: _____ For: _____ Amount: $ _____
Pay to: _____ For: _____ Amount: $ _____

**(17)** ☑ **Batterer Intervention Program**
I ask the court to order the person listed in (2) to go to a 52-week batterer intervention program and show proof of completion to the court.

**(18)** ☐ **No Fee to Serve (Notify) Restrained Person**
*If you want the sheriff or marshal to serve (notify) the restrained person about the orders for free, ask the court clerk what you need to do.*

**This is not a Court Order.**

**Request for Order**
**(Domestic Violence Prevention)**
DV-100, Page 3 of 4 →

7

Case Number: **RIV 016744**

Your name: SHIKIRA SANDERS

## What orders do you want? Check the boxes that apply to your case. ☑

**(19)** ☐ **More Time for Notice**
I need extra time to notify the person in ② about these papers. Because of the facts explained on this form, I want the papers served up to _____ days before the date of the hearing. *For help, read Form DV-210-INFO.*
*If necessary, add additional facts:* _____

**(20)** ☑ **Other Orders**
What other orders are you asking for? Authorization to record Lis Pendens against the real property described as: 811 Master Way; Beaumont, CA 92223
☐ Check here if you need more space. Attach Form MC-020 and write "DV-100, Item 20—Other Orders" by your statement.

**(21)** **Guns or Other Firearms**
I believe the person in ② owns or possesses guns or firearms. ☑ Yes ☐ No ☐ I don't know
*If the judge approves the order, the person in ② will be required to sell to a gun dealer or turn in to police any guns or firearms that he or she owns or possesses.*

**(22)** Describe the most recent abuse.
a. Date of most recent abuse: May 13, 2009
b. Who was there? Myself and my sons
c. What did the person in ② do or say that made you afraid?
Upon notifying him of divorce, the Defendant said: "If you try to file anything against me, I'll deal with you, and I got folks and homies who'll deal with your family". and, "If you try to divorce me I'll just throw your ass out the house". I feel threatened and afraid that these threats could be carried out by the Defendant and that he has a reasonable capacity to carried them out.
_____
d. Describe any use or threatened use of guns or other weapons: During the same conversation, the defendant implied and/or hinted that there are guns hidden in the house.
e. Describe any injuries: _____
f. Did the police come? ☑ No ☐ Yes
If yes, did they give you an Emergency Protective Order? ☐ Yes ☑ No ☐ I don't know
*Attach a copy if you have one.*
☐ Check here if you need more space. Use Form MC-020 and write "DV-100, Item 22—Recent Abuse" by your statement.
☐ Check here if the person in ② has abused you (or your children) other times. Use Form DV-101 or Form MC-020 to describe any previous abuse.

I declare under penalty of perjury under the laws of the State of California that the information above is true and correct.

Date: May 15, 2009

SHIKIRA SANDERS
*Type or print your name*                              *Sign your name*

**This is not a Court Order.**



8

Recording requested by:

SHIKIRA  SANDERS

When recorded mail to:

)

)

)

)

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

JUN 0 1 2009

K. McAllaster

# NOTICE OF LIS PENDENS
(C.C.P. Sec. 405.2.)

NOTICE OF PENDENCY OF ACTION RELATING TO SUPERIOR COURT CASE #: RID230569/ RIV016744, in and for the County of Riverside, in the State of California.

**Litigants in this action:**
PLAINTIFF(S):                                           DEFENDANT(S):
1. Shikira Sanders                          1. Thellas Sanders, III

Notice is hereby given that the above-entitled action was filed in the above-entitled court on May 15 / May 18 , 200 9 , by Shikira Sanders , Plaintiff, against Thellas Sanders , Defendant.

The action affects either one of the following:
X   Title to real property.
X   Right to possession of real property.
_____ Easement.

The real property identified in this action is:
Situs address:        811 Master Way
                      Beaumont, CA 92223
Legal description (optional):    Lot 54; Tract 29183
Owner of record (if known):    Thellas Sanders, III

The forthcoming hearing or trial date for this action is: pending (RID230569)  ,200 9
                                                    June 06 (RIV016744)

**VERIFICATION**

I swear the foregoing to be true and correct to the best of my knowledge.

X _Shn M Sanders_    x Shikira H Sanders        Shn M Sanders
Claimant(s)

EXHIBIT(S) ATTACHED:
1. FL-100; FL-110
2. DV-110                              _____

                                      Judge: _____

EVIDENCE

1. The Petitioner is the wife of the disputed owner of record, Thellas Sanders, III.

2. The Petitioner is now in lawful possession of the property by order of the court in a related matter, case #: RIV016744. — Restraining order

3. The Respondent committed an act of fraud resulting the Petitioner's absence on title. — Perjury - She helped and did paperwork

4. ~~The Petitioner is holder-in-due-course of a Mechanic's Lien filed against the property, dated 05/15/09.~~

5. ~~The Petitioner fears retaliatory actions by the Respondent, inclusive of but not limited to, conveyance, re-conveyance, sale or foreclosure which may result from legal actions taken by the Petitioner.~~ (which is why I'm incarcerated)

6. The Petitioner has a substantial equitable claim invested in the property.

7. The Petitioner has several minor children living with her, one of whom suffers from a severe disability, and has reasonable need for special accommodations. How is my home Special Accomodations?

8. It is the clear duty of the court to grant this order of lis pendens and the Petitioner has no other recourse available to her.

9. ~~The Petitioner might suffer extreme hardships should the court not exercise its duty to grant this order of lis pendens.~~

WHEREFORE, the petitioner prays for the following:

1. A temporary order of receivership against the property.

2. An order authorizing recordation of lis pendens.

Points and authorities are attached.

### VERIFICATION

I swear under penalty of perjury the foregoing to be true and correct to the best of my knowledge.

SHIKIRA SANDERS    Shikira Sanders    05/20/09

# DOCUMENT SYSTEMS, INC.   *Loan Document Worksheet* # 412495_159

| Company Name: CITIZENS NATIONAL BANK OF PARIS | Account No.: 412495 |
|---|---|

| | | |
|---|---|---|
| PLAN CODE: 212CMMW | ALT. LENDER CODE: 412495_1000 | BROKER: AMERICAN ONE FINANCE |
| LOAN TYPE: CONVENTIONAL | PURPOSE: PURCHASE | RATE TYPE: Fixed Rate |
| PAYMENT TYPE: MONTHLY | LOAN #: 1877108801 | MIN #: |
| CASE #: | FHA SECTION NO.: | APPLICATION DATE: 01/15/2009 |
| RATE LOCK: 03/04/2009 | DOCUMENT DATE: 03/05/2009 | CLOSING DATE: 03/05/2009 |
| SIGNING DATE: | CANCEL DATE: | DISBURSEMENT DATE: 03/06/2009 |
| LOAN PROCEEDS TO: Title Company | REPRESENTATIVE: CHARLES VAMADEVA | BRANCH: |

## BORROWERS/SELLERS

CORPORATE/TRUST NAME:

|  | Type* |  | Type* |
|---|---|---|---|
| BORROWER #1: THELLAS SANDERS, III XXX-XX-3876 | I | BORROWER #2: | |
| AKA/POA: | | AKA/POA: | |
| BORROWER #3: | | BORROWER #4: | |
| AKA/POA: | | AKA/POA: | |
| BORROWER #5: | | BORROWER #6: | |
| AKA/POA: | | AKA/POA: | |

VESTING TO READ: THELLAS SANDERS, III, AN UNMARRIED MAN

MAILING ADDRESS: 811 MASTER WAY, BEAUMONT, CALIFORNIA 92223
SELLER CORPORATE/TRUST NAME:
SELLER #1:                                                          SELLER #2:
SELLER ADDRESS:
*TYPE: I= Individual   T= Title Only   O= Officer   C= Co-signer   A= Attorney   S= Non-Title Spouse

## PROPERTY

| PROPERTY ADDRESS: 811 MASTER WAY | CITY: BEAUMONT | |
|---|---|---|
| COUNTY: RIVERSIDE | STATE: CALIFORNIA | ZIP: 92223 |
| OWNER OCCUPIED: Yes | PROPERTY TYPE: Single Family | FLOOD ZONE: X |
| CONDO/PUD NAME: | SECOND HOME: No | |

LEGAL DESCRIPTION:
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.: 400-501-0091

## TERMS

| | | |
|---|---|---|
| RATE TYPE: Fixed Rate | GPM TYPE: | BUYDOWN TYPE: |
| APPRAISED VALUE: $ 250,000.00 | SALES PRICE: $ 244,000.00 | APPROVED JR. LIENS: $ .00 |
| LOAN AMOUNT: $ 249,000.00 | INITIAL INTEREST RATE: 5.500% | TERM: (# MOS) 360 |
| AMORTIZATION TERM: (# MOS) 360 | PAYMENT: $ 1,413.79 | FIRST PAYMENT DATE: 05/01/2009 |
| INT. CHANGE DATE: | PAYMENT CHANGE DATE: | MARGIN: % |
| CURRENT INDEX: % | CEILING (MAX) RATE: % | FLOOR (MIN) RATE: % |
| INITIAL RATE CAP: % | SUBSEQUENT RATE CAP: % | LIFETIME RATE CAP: % |
| HELOC: Initial Advance $ | Draw Period: months   Repayment Period: months | Annual Charge? No |
| PREPAID INTEREST: 26 days @ $37.5205 = $975.53 | | PREPAID INTEREST PAID BY: Borrower |
| PREPAY PENALTY? No | PREPAY # MOS: | SOFT PREPAY # MOS: | ASSUMABLE? No |

## CHARGES/FEES/PREMIUMS

| CHARGE | FEE TO* | AMOUNT | PD BY* | POC? | PART APR? | MISC. CHARGE DESCRIPTION | FEE TO* | AMOUNT | PD BY* | POC? |
|---|---|---|---|---|---|---|---|---|---|---|
| Appraisal | S | $ 150.00 | B | Y | N | COURIER FEE | L | $ 40.00 | S | N |
| Amount Paid | | $ 350.00 | | | N | ADMINISTRATION FEE | S | $ 150.00 | S | N |
| Appraisal Review | | $ | | | N | FLOOD DETERMINATION | S | $ 17.00 | S | N |
| Credit Report | S | $ 10.00 | S | N | Y | USDA GUARANTEE FEE | O | $ 4,980.00 | B | N |
| Amount Paid | | $ | | | N | HAZARD INS. PREMIUM | S | $ 899.00 | S | N |
| Document | | $ | | | N | DELINQ TAXES | O | $ 5,500.00 | S | N |
| Escrow | | $ | | | N | CLOSING FEE | S | $ 550.00 | S | N |
| Flood Certification | | $ | | | N | DETAILED ESCROW FEE | S | $ 980.00 | S | N |
| Funding | S | $ 150.00 | S | N | | | | | | |
| MIP Financed | | $ | | | LOAN FEE TYPE | FEE TO* | POINTS | FIXED | PD BY* | POC? |
| Notary | | $ | | | Loan Origination Fee | | % + $ | | | |
| Processing | B | $ 500.00 | S | N | Loan Origination Fee | | % + $ | | | |
| Rec/Filing | S | $ 90.00 | S | N | Loan Discount Fee | | % + $ | | | |
| Tax Service | S | $ 73.00 | S | N | | | | | | |
| Title | | $ | | | PREMIUM TYPE | | | | | |
| Underwriting | S | $ 625.00 | S | N | Yield Adjustment Credit (Rebate) | | % + $ | | | |
| Warehouse | | $ | | | Service Release Premium | | % + $ | | | |
| Wire | S | $ 22.50 | S | N | YIELD SPREAD PREMIUM | B | .473 | % + $ | | |

* FEE TO  B= Broker  L= Lender  I= Investor  A= Affiliate  H= HUD  V= VA  S= Service Provider  O= Other
** PD BY  B= Borrower  S= Seller  R= Broker  L= Lender  I= Investor  D= Other

11

ORIGINAL

RECORDING REQUESTED BY

**Shikira Sanders**

AND WHEN RECORDED MAIL DOCUMENT TO:

NAME **Thellas Sanders, III**

STREET ADDRESS **811 Master Way**

CITY, STATE & ZIP CODE **Beaumont, CA 92223**

DOC # 2009-0245302
05/15/2009 08:00A Fee:12.00
Page 1 of 2
Recorded in Official Records
County of Riverside
Larry W. Ward
Assessor, County Clerk & Recorder

| S | R | U | PAGE | SIZE | DA | MISC | LONG | RFD | COPY |
|---|---|---|---|---|---|---|---|---|---|
| | | | ✓ | | | | | | 9 |
| M | A | L | 465 | 426 | PCOR | NCOR | SMF | NCHG | EXAM 002 |
| | | | | | | T: | | CTY | UNI |

21

C 002

## Mechanic's Lien

The undersigned, **Shikira Sanders** referred to in this claim of lien as the claimant,
(Full name of person or firm claiming mechanic's lien)

claims a mechanics' lien for the labor, services, equipment and/or materials described below, furnished for a work of improvement upon that certain real property located in the County of **Riverside**, State of California, and described as follows:

Street Address: **811 Master Way; Beaumont, CA 92223**

Legal Description: **Lot 54; Tract 29183**

After deducting all just credits and offsets, the sum of $ **8,000.00**, together with interest thereon at the rate of **10** percent per annum from **03/11/09**, is due claimant for the following labor, services, equipment and/or materials: **Services: Interior and Walls, etc. Equipment: Tools and labor**

The name of the person or company by whom claimant was employed, or to whom claimant furnished the labor, services, equipment and/or materials is **Thellas Sanders, III**

The name(s) and address(es) of the owner(s) or reputed owner(s) of the real property is/are:

**Thellas Sanders, III**

**811 Master Way; Beaumont, CA 92223**

**EXHIBIT "A":**
**Affidavit of Adverse** Name of Claimant **SHIKIRA SANDERS**
**Claim to Land and Title** By X **Shikira Sanders**
(Signature of claimant or authorized agent and title)

## VERIFICATION

I, the undersigned, state: I am the **Attorney-in-fact** of **Shikira Sanders**
(Title)                                              (Name of claimant)

the claimant named in the foregoing claim of mechanics' lien; I am authorized to make this verification for the claimant; I have read the foregoing claim of mechanics' lien and know the contents thereof, and the same is true to my own knowledge.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on **May 15, 2009**, at **Riverside**, California

05/15/09

* There are various types of form an attorney if you have questions

**EXHIBIT 5**

use this form you many want to consult r transaction.

EXHIBIT A: ATTACHMENT TO MECHANIC'S LIEN

Recording requested by:

Shikira Sanders

# AFFIDAVIT
## OF
## ADVERSE CLAIM TO LAND AND TITLE
(Pursuant to C.J.S., Chpt. 2; Sec. 55)

Parcel #: 400-501-0091
Assessed value: 250,000.00

FOR VALUBLE CONSIDERATION, the undersigned party, named herein,  SHIKIRA SANDERS, lawful wife and agent for the SANDERS FAMILY, an indigenous occupant of these territories and lawful citizen of the United States of America, resident in the State of California, does hereby make this notorious declaration of an open, hostile and adverse claim to the real property commonly known and legally described as:
Situs address

### 811 Master Way; Beaumont, CA 92223

Legal description:

### Lot 54 of Tract 29183

WHEREAS, in execution of this claim, I, Shakira Sanders, declare the following:

NATURE OF COMPLAINT: I declare that the property herein listed was obtained through an act of fraud by the owner of record and subject to quiet title action by the adverse claimant.

ADVERSE OWNER: **Shikira Sanders**
DISPUTED OWNER OF RECORD: **Thellas Sanders**
CLAIMANT'S DATE OF ENTRY: **March 11, 2009**

NOTICE: Wherefore, I, Shikira Sanders, do make this claim upon the real property herein listed and assume adverse possession of the same pursuant to Corpus Juris Secundum sections: 27, 34, 35, 36, 39 and 55.

## VERIFICATION
I swear under penalty of perjury the foregoing to be true and correct to the best of my knowledge.

SHIKIRA SANDERS

RAFIQ BEY
WITNESS          05/15/09

1   ~~subsequently qualify for first-time homebuyers benefits and thereafter~~

2   ~~defraud the spouse of her entitlements to community property (see~~

3   exhibit 7: Loan Document Worksheet, page 1).

4                                    **VERIFICATION**

5       I swear under penalty of perjury the foregoing to be true and correct

6   to the best of my knowledge.

7

8                               Dated this 1st day of June, 2009

9                               _____
                                SHIKIRA SANDERS

10                                        *
                                          *
11                                        *
                                          *
12                                        *
                                          *
13                                        *
                                          *
14                                        *
                                          *
15                                        *
                                          *
16                                        *
                                          *
17                                        *
                                          *
18                                        *
                                          *
19                                        *
                                          *
20                                        *
                                          *
21                                        *
                                          *
22                                        *
                                          *
23                                        *
                                          *
24                                        *
                                          *
25                                        *

Summary of Pleading - 3

FL-100

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

SHIKIRA SANDERS
811 Master Way; Beaumont, CA 92223

TELEPHONE NO.: 909-991-9596    FAX NO. *(Optional):*

E-MAIL ADDRESS *(Optional):*

ATTORNEY FOR *(Name):* In propria persona

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

MAY 18 2009

K Brown

KAR
MAY 28 2009
R

SUPERIOR COURT OF CALIFORNIA, COUNTY OF
STREET ADDRESS: 4175 Main Street   Superior Court of California
MAILING ADDRESS: Superior Court of California   County of Riverside
CITY AND ZIP CODE: County of Riverside   880 N. State Street
BRANCH NAME: Riverside CA 92501   Riverside, CA 92501   Hemet, CA 92543

MARRIAGE OF
PETITIONER: SHIKIRA SANDERS

RESPONDENT: THELLAS SANDERS, III

PETITION FOR

- [✓] **Dissolution of Marriage**
- [ ] **Legal Separation**
- [ ] **Nullity of Marriage**   [ ] AMENDED

CASE NUMBER:

RID230569

1. **RESIDENCE (Dissolution only)** [✓] Petitioner [✓] Respondent  has been a resident of this state for at least six months and of this county for at least three months immediately preceding the filing of this *Petition for Dissolution of Marriage.*

2. **STATISTICAL FACTS**
   a. Date of marriage: 02/16/08
   b. Date of separation: 05/15/09
   c. Time from date of marriage to date of separation *(specify):*
      Years: 01   Months: 03

3. **DECLARATION REGARDING MINOR CHILDREN** *(include children of this relationship born prior to or during the marriage or adopted during the marriage):*
   a. [✗] There are no minor children.
   b. [ ] The minor children are:

   | Child's name | Birthdate | Age | Sex |
   |---|---|---|---|
   | | | | |

   c. [ ] Continued on Attachment 3b.
   c. If there are minor children of the Petitioner and Respondent, a completed *Declaration Under Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA)* (form FL-105) must be attached.
   d. [ ] A completed voluntary declaration of paternity regarding minor children born to the Petitioner and Respondent prior to the marriage is attached.

4. **SEPARATE PROPERTY**
   Petitioner requests that the assets and debts listed [ ] in *Property Declaration* (form FL-160) [ ] in Attachment 4
   [✗] below  be confirmed as separate property.

   | Item | Confirm to |
   |---|---|
   | 1. Real property: 3143 N, Sanchez, San Bernardino, CA 92404 | Shikira Sanders |
   | 2. Auto: 2001 Ford Expedition | Shikira Sanders |

**NOTICE: You may redact (black out) social security numbers from any written material filed with the court in this case other than a form used to collect child or spousal support.**

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
FL-100 [Rev. January 1, 2005]

**PETITION—MARRIAGE**
(Family Law)

Family Code, §§ 2330, 3409,
www.courtinfo.ca.gov

American LegalNet, Inc.
www.USCourtForms.com

14

| MARRIAGE OF (last name, first name of parties): | CASE NUMBER |
|---|---|
| SHIKIRA SANDERS<br>THELLAS SANDERS, III | 2 3 0 5 6 9 |

5. **DECLARATION REGARDING COMMUNITY AND QUASI-COMMUNITY ASSETS AND DEBTS AS CURRENTLY KNOWN**
   - a. ☐ There are no such assets or debts subject to disposition by the court in this proceeding.
   - b. ☑ All such assets and debts are listed ☐ in *Property Declaration* (form FL-160) ☑ in Attachment 5b.
     - ☐ below (specify):
       Real property: 811 Master Way; Beaumont, CA 92223

6. **Petitioner requests**
   - a. ☑ dissolution of the marriage based on
     - (1) ☑ irreconcilable differences. (Fam. Code, § 2310(a).)
     - (2) ☐ incurable insanity. (Fam. Code, § 2310(b).)
   - b. ☑ legal separation of the parties based on
     - (1) ☑ irreconcilable differences. (Fam. Code, § 2310(a).)
     - (2) ☐ incurable insanity. (Fafn. Code, § 2310(b).)
   - c. ☐ nullity of void marriage based on
     - (1) ☐ incestuous marriage. (Fam. Code, § 2200.)
     - (2) ☐ bigamous marriage. (Fam. Code, § 2201.)
   - d. ☑ nullity of voidable marriage based on
     - (1) ☐ petitioner's age at time of marriage. (Fam. Code, § 2210(a).)
     - (2) ☐ prior existing marriage. (Fam. Code, § 2210(b).)
     - (3) ☐ unsound mind. (Fam. Code, § 2210(c).)
     - (4) ☑ fraud. (Fam. Code, § 2210(d).)
     - (5) ☐ force. (Fam. Code, § 2210(e).)
     - (6) ☐ physical incapacity. (Fam. Code, § 2210(f).)

7. **Petitioner requests that the court grant the above relief and make injunctive (including restraining) and other orders as follows:**

| | Petitioner | Respondent | Joint | Other |
|---|---|---|---|---|
| a. Legal custody of children to ..................................................... | ☑ | ☐ | ☐ | ☐ |
| b. Physical custody of children to .................................................. | ☑ | ☐ | ☐ | ☐ |
| c. Child visitation be granted to .................................................... | ☑ | ☐ | ☐ | ☐ |

   As requested in form: ☐ FL-311 ☐ FL-312 ☐ FL-341(C) ☐ FL-341(D) ☐ FL-341(E) ☐ Attachment 7c.
   - d. ☐ Determination of parentage of any children born to the Petitioner and Respondent prior to the marriage.
   - e. ☐ Attorney fees and costs payable by ...............................................................
   - f. ☐ Spousal support payable to (earnings assignment will be issued) ................................. ☑ Petitioner ☐ Respondent
   - g. ☐ Terminate the court's jurisdiction (ability) to award spousal support to Respondent.
   - h. ☑ Property rights be determined.
   - i. ☑ ~~Petitioner's former name be restored to (specify):~~
   - j. ☑ Other (specify):
     - ☐ Continued on Attachment 7j.

8. **Child support**—If there are minor children born to or adopted by the Petitioner and Respondent before or during this marriage, the court will make orders for the support of the children upon request and submission of financial forms by the requesting party. An earnings assignment may be issued without further notice. Any party required to pay support must pay interest on overdue amounts at the "legal" rate, which is currently 10 percent.

9. **I HAVE READ THE RESTRAINING ORDERS ON THE BACK OF THE SUMMONS, AND I UNDERSTAND THAT THEY APPLY TO ME WHEN THIS PETITION IS FILED.**

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: May 18, 2009

SHIKIRA SANDERS
_____
(TYPE OR PRINT NAME)

☒ _____
(SIGNATURE OF PETITIONER)

Date:
_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF ATTORNEY FOR PETITIONER)

**NOTICE:** Dissolution or legal separation may automatically cancel the rights of a spouse under the other spouse's will, trust, retirement plan, power of attorney, pay on death bank account, survivorship rights to any property owned in joint tenancy, and any other similar thing. It does not automatically cancel the right of a spouse as beneficiary of the other spouse's life insurance policy. You should review these matters, as well as any credit cards, other credit accounts, insurance polices, retirement plans, and credit reports to determine whether they should be changed or whether you should take any other actions. However, some changes may require the agreement of your spouse or a court order (see Family Code sections 231–235).

FL-100 [Rev. January 1, 2005]

**PETITION—MARRIAGE**
**(Family Law)**

15

FL-160

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| SHIKIRA SANDERS<br>811 Master Way<br>Beaumont, CA 92223<br><br>TELEPHONE NO.:          FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): In propria persona | FILED<br>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF RIVERSIDE<br><br>JUL 2 2 2009 |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Riverside
STREET ADDRESS: 4175 Main Street
MAILING ADDRESS:
CITY AND ZIP CODE:  Riverside, CA
BRANCH NAME:

PETITIONER:  SHIKIRA SANDERS

RESPONDENT:  THELLAS SANDERS, III

| [✓] PETITIONER'S   [ ] RESPONDENT'S<br>[✓]  COMMUNITY AND QUASI-COMMUNITY PROPERTY DECLARATION<br>[ ]  SEPARATE PROPERTY DECLARATION | CASE NUMBER:<br><br>RID230569 |
|---|---|

### INSTRUCTIONS

When this form is attached to the *Petition* or *Response*, values and your proposal regarding division need not be completed. Do not list community, including quasi-community, property with separate property on the same form. Quasi-community property must be so identified. For additional space, use *Continuation of Property Declaration* (form FL-161).

| ITEM NO. | BRIEF DESCRIPTION | GROSS FAIR MARKET VALUE | AMOUNT OF DEBT | NET FAIR MARKET VALUE | PROPOSAL FOR DIVISION Award to: | |
|---|---|---|---|---|---|---|
| | | | | | PETITIONER | RESPONDENT |
| 1. | REAL ESTATE<br>House: 811 Master Way<br>Beaumont, CA 92223 | $ 250,000 | $ 264,000 | $ 245,000 | $ 100% Full | $ 0 |
| 2. | HOUSEHOLD FURNITURE, FURNISHINGS, APPLIANCES<br>T.V's, dishes, Appliances 1,000<br>paintings | $ 0 | 700.00<br>1,000 24 | 100% | 0 |
| 3. | JEWELRY, ANTIQUES, ART, COIN COLLECTIONS, etc. | NONE | NONE | NONE | NONE | none |
| 4. | VEHICLES, BOATS, TRAILERS<br>Expedition 2001 | 4,500 | 10,000 | 4,000 | 100% | 0 |

Form Adopted for Mandatory Use
Judicial Council of California
FL-160 [Rev. January 1, 2007]

**PROPERTY DECLARATION**
**(Family Law)**

Family Code, §§ 115, 2500–2660
www.courtinfo.ca.gov

American LegalNet, Inc.
www.FormsWorkflow.com

16

FL-160

| ITEM NO. | BRIEF DESCRIPTION | GROSS FAIR MARKET VALUE | AMOUNT OF DEBT | NET FAIR MARKET VALUE | PROPOSAL FOR DIVISION Award to: | |
|---|---|---|---|---|---|---|
| | | | | | PETITIONER | RESPONDENT |
| 5. | SAVINGS, CHECKING, CREDIT UNION, CASH | $ 0 | $ 0 | $ 0 | $ 0 | $ 0 |
| 6. | LIFE INSURANCE (CASH VALUE) | 0 | 0 | 0 | 0 | 0 |
| 7. | EQUIPMENT, MACHINERY, LIVESTOCK | 0 | 0 | 0 | 0 | 0 |
| 8. | STOCKS, BONDS, SECURED NOTES | | | | | |
| 9. | RETIREMENT, PENSION, PROFIT-SHARING, ANNUITIES | 0 | 0 | 0 | 0 | 0 |
| 10. | ACCOUNTS RECEIVABLE, UNSECURED NOTES, TAX REFUNDS | 0 | 0 | 0 | 0 | 0 |
| 11. | PARTNERSHIPS, OTHER BUSINESS INTERESTS | 0 | 0 | 0 | 0 | 0 |
| 12. | OTHER ASSETS AND DEBTS | 0 | 0 | 0 | 0 | 0 |
| 13. | TOTAL FROM CONTINUATION SHEET | | | | | |
| 14. | TOTALS | 261,000 | 586,000 | 254,700 | 100,000 | 0 |

15. ☐ A *Continuation of Property Declaration* (form FL-161) is attached and incorporated by reference.

I declare under penalty of perjury under the laws of the State of California that, to the best of my knowledge, the foregoing is a true and correct listing of assets and obligations and the amounts shown are correct.

Date: July 01, 2009

SHIKIRA SANDERS
    (TYPE OR PRINT NAME)

▶ *Shra Sanders*
    (SIGNATURE)

**PROPERTY DECLARATION**
(Family Law)

17

JUL 0 2 2009
F-501
FL-165

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| SHIKIRA SANDERS<br>811 Master Way<br>Beaumont, CA 92223 | |

TELEPHONE NO.:          FAX NO. (Optional):

E-MAIL ADDRESS (Optional):

ATTORNEY FOR (Name): In propria perosa

**F I L E D**

SUPERIOR COURT OF CALIFORNIA, COUNTY OF

STREET ADDRESS: 4175 Main Street

MAILING ADDRESS:

CITY AND ZIP CODE: Riverside, CA

BRANCH NAME: Family

SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

JUL 22 2009

PETITIONER: SHIKIRA SANDERS

RESPONDENT: THELLAS SANDERS, III

| REQUEST TO ENTER DEFAULT | CASE NUMBER:<br>RID 230569 |
|---|---|

1. **To the clerk:** Please enter the default of the respondent who has failed to respond to the petition.

2. A completed *Income and Expense Declaration* (form FL-150) or *Financial Statement (Simplified)* (form FL-155) ☑ is attached ☑ is not attached.

A completed *Property Declaration* (form FL-160) ☑ is attached ☑ is not attached because (check at least one of the following):
   - (a) ☑ there have been no changes since the previous filing.
   - (b) ☐ the issues subject to disposition by the court in this proceeding are the subject of a written agreement.
   - (c) ☐ there are no issues of child, spousal, or partner support or attorney fees and costs subject to determination by the court.
   - (d) ☐ the petition does not request money, property, costs, or attorney fees. (Fam. Code, § 2330.5.)
   - (e) ☐ there are no issues of division of community property.
   - (f) ☐ this is an action to establish parental relationship.

Date: July 01, 2009

SHIKIRA SANDERS

(TYPE OR PRINT NAME)         (SIGNATURE OF [ATTORNEY FOR] PETITIONER)

3. **Declaration**
   - a. ☐ No mailing is required because service was by publication or posting and the address of the respondent remains unknown.
   - b. ☑ A copy of this *Request to Enter Default*, including any attachments and an envelope with sufficient postage, was provided to the court clerk, with the envelope addressed as follows (address of the respondent's attorney or, if none, the respondent's last known address):

   4000 Orange Street; Riverside CA 72501

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: July 01, 2009

SHIKIRA SANDERS

(TYPE OR PRINT NAME)         (SIGNATURE OF DECLARANT)

| FOR COURT USE ONLY |
|---|
| ☑ *Request to Enter Default* mailed to the respondent or the respondent's attorney on (date): JUL 2 2 2009 |
| ☑ Default entered as requested on (date): JUL 2 2 2009 |
| ☐ Default not entered. Reason: |
| Clerk, by _____, Deputy |

Form Adopted for Mandatory Use
Judicial Council of California
FL-165 [Rev. January 1, 2005]

**REQUEST TO ENTER DEFAULT**
(Family Law—Uniform Parentage)

Code of Civil Procedure, §§ 585, 587;
Family Code, § 2336.6
www.courtinfo.ca.gov

Page 1 of 2

American LegalNet, Inc.
www.USCourtForms.com

18

FL-170

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

**SHIKIRA SANDERS**
811 Master Way
Beaumont, CA 92223

TELEPHONE NO.:  FAX NO. *(Optional):*

E-MAIL ADDRESS *(Optional):*

ATTORNEY FOR *(Name):*  In propria persona

SUPERIOR COURT OF CALIFORNIA, COUNTY OF
STREET ADDRESS:  4175 Main Street
MAILING ADDRESS:
CITY AND ZIP CODE:  Riverside, CA
BRANCH NAME:  Family

PETITIONER:  SHIKIRA SANDERS

RESPONDENT:  THELLAS SANDERS, III

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

SEP 03 2009

| DECLARATION FOR DEFAULT OR UNCONTESTED<br>[✓] DISSOLUTION  [ ] LEGAL SEPARATION | CASE NUMBER:<br>RID230569 |
|---|---|

**(NOTE: Items 1 through 16 apply to both dissolution and legal separation proceedings.)**

1. I declare that if I appeared in court and were sworn, I would testify to the truth of the facts in this declaration.

2. I agree that my case will be proven by this declaration and that I will not appear before the court unless I am ordered by the court to do so.

3. All the information in the [✓] *Petition* [ ] *Response* is true and correct.

4. **Default or uncontested** *(Check a or b.)*
   a. [✓] The default of the respondent was entered or is being requested, and I am not seeking any relief not requested in the petition. **OR**
   b. [ ] The parties have agreed that the matter may proceed as an uncontested matter without notice, and the agreement is attached or is incorporated in the attached settlement agreement or stipulated judgment.

5. **Settlement agreement** *(Check a or b.)*
   a. [ ] The parties have entered into [ ] **an agreement** [ ] **a stipulated judgment** regarding their property their marriage or domestic partnership rights, including support, the original of which is or has been submitted to the court. I request that the court approve the agreement. **OR**
   b. [✓] There is no agreement or stipulated judgment, and the following statements are true *(check at least one, including Item (2) if a community estate exists):*
      (1) [ ] There are no community or quasi-community assets or community debts to be disposed of by the court.
      (2) [✓] The community and quasi-community assets and debts are listed on the attached completed current *Property Declaration* (form FL-160), which includes an estimate of the value of the assets and debts that I propose to be distributed to each party. The division in the proposed *Judgment (Family Law)* (form FL-180) is a fair and equal division of the property and debts, or if there is a negative estate, the debts are assigned fairly and equitably.

6. **Declaration of disclosure** *(Check a, b, or c.)*
   a. [ ] Both the petitioner and respondent have filed, or are filing concurrently, a *Declaration Regarding Service of Declaration of Disclosure* (form FL-141) and an *Income and Expense Declaration* (form FL-150).
   b. [✓] This matter is proceeding by default. I am the petitioner in this action and have filed a proof of service of the preliminary *Declaration of Disclosure* (form FL-140) with the court. I hereby waive receipt of the final *Declaration of Disclosure* (form FL-140) from the respondent.
   c. [✗] This matter is proceeding as an uncontested action. Service of the final *Declaration of Disclosure* (form FL-140) is mutually waived by both parties. A waiver provision executed by both parties under penalty of perjury is contained in the settlement agreement or proposed judgment or another, separate stipulation.

7. [✓] **Child custody** should be ordered as set forth in the proposed *Judgment (Family Law)* (form FL-180).

8. [✗] **Child visitation** should be ordered as set forth in the proposed *Judgment (Family Law)* (form FL-180).

9. **Spousal, partner, and family support** *(If a support order or attorney fees are requested, submit a completed Income and Expense Declaration (form FL-150) unless a current form is on file. Include your best estimate of the other party's income. Check at least one of the following.)*
   a. [ ] I knowingly give up forever any right to receive spousal or partner support in the future to *(name):* Shikira Sanders
   b. [✓] I ask the court to reserve jurisdiction to award spousal or partner support in the proposed *Judgment (Family Law)* (form FL-180).
   c. [✓] Spousal or partner support should be ordered as set forth in the proposed *Judgment (Family Law)* (form FL-180).
   d. [✓] Family support should be ordered as set forth in the proposed *Judgment (Family Law)* (form FL-180).

Page 1 of 2

Family Code, § 2336
www.courtinfo.ca.gov

Form Adopted for Mandatory Use
Judicial Council of California
FL-170 [Rev. January 1, 2007]

**DECLARATION FOR DEFAULT OR UNCONTESTED
DISSOLUTION or LEGAL SEPARATION
(Family Law)**

American LegalNet, Inc.
www.FormsWorkflow.com

19



FL-170

| PETITIONER: SHIKIRA SANDERS | CASE NUMBER: |
|---|---|
| RESPONDENT: THELLAS SANDERS, III | RID230569 |

10. ☒ Child support should be ordered as set forth in the proposed *Judgment (Family Law)* (form FL-180).

11. a. I ☐ am receiving ☒ am not receiving ☐ intend to apply for public assistance for the child or children listed in the proposed order.

b. To the best of my knowledge, the other party ☐ is ☒ is not receiving public assistance.

12. ☐ The petitioner ☐ respondent is presently receiving public assistance, and all support should be made payable to the local child support agency at the address set forth in the proposed judgment. A representative of the local child support agency has signed the proposed judgment.

13. If there are minor children, check and complete item a and item b or c.

a. My gross (before taxes) monthly income is *(specify):* $ 4,000

The estimated gross monthly income of the other party is *(specify):* $ 0

b. ☑ The estimated gross monthly income of the other party for the following reasons *(specify):*

c. ☐ I have no knowledge of the estimated monthly income of the other party.

d. ☒ I request that this order be based on the ☐ petitioner's ☒ respondent's earning ability. The facts in support of my estimate of earning ability are *(specify):* has the ability to work

☐ Continued on Attachment 13d.

14. ☒ **Parentage** of the children of the petitioner and respondent born prior to their marriage or domestic partnership should be ordered as set forth in the proposed *Judgment (Family Law)* (form FL-180). A declaration regarding parentage is attached.

15. ☐ **Attorney fees** should be ordered as set forth in the proposed *Judgment (Family Law)* (form FL-180).

16. ☐ The petitioner ☐ respondent requests restoration of his or her former name as set forth in the proposed *Judgment (Family Law)* (form FL-180).

17. There are irreconcilable differences that have led to the irremediable breakdown of the marriage or domestic partnership, and there is no possibility of saving the marriage or domestic partnership through counseling or other means.

18. This declaration may be reviewed by a commissioner sitting as a temporary judge, who may determine whether to grant this request or require my appearance under Family Code section 2336.

**STATEMENTS IN THIS BOX APPLY ONLY TO DISSOLUTIONS—Items 19 through 21**

19. If this is a dissolution of marriage or of a domestic partnership created in another state, the petitioner and/or the respondent has been a resident of this county for at least three months and of the state of California for at least six months continuously and immediately preceding the date of the filing of the petition for dissolution of marriage or domestic partnership.

20. I ask that the court grant the request for a judgment for dissolution of marriage or domestic partnership based upon irreconcilable differences and that the court make the orders set forth in the proposed *Judgment (Family Law)* (form FL-180) submitted with this declaration.

21. ☒ This declaration is for the termination of marital or domestic partner status only. I ask the court to reserve jurisdiction over all issues whose determination is not requested in this declaration.

**THIS STATEMENT APPLIES ONLY TO LEGAL SEPARATIONS**

22. I ask that the court grant the request for a judgment for legal separation based upon irreconcilable differences and that the court make the orders set forth in the proposed *Judgment (Family Law)* (form FL-180) submitted with this declaration.

I understand that a judgment of legal separation does not terminate a marriage or domestic partnership and that I am still married or a partner in a domestic partnership.

23. ☐ Other *(specify):*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: July 01, 2009

SHIKIRA SANDERS
_____
(TYPE OR PRINT NAME)

_____
(SIGNATURE OF DECLARANT)

Page 2 of 2

FL-170 [Rev. January 1, 2007]

**DECLARATION FOR DEFAULT OR UNCONTESTED DISSOLUTION or LEGAL SEPARATION**
(Family Law)



FL-190

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*<br>SHIKIRA SANDERS<br>811 Master Way<br>Beaumont, CA 92404<br>TELEPHONE NO.:<br>E-MAIL ADDRESS *(Optional):*<br>ATTORNEY FOR *(Name):* In propria persona | **FOR COURT USE ONLY**<br>BRE<br><br>F I L E D<br>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF RIVERSIDE<br><br>SEP 03 2009<br><br>SEP 04 2009 BRE |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF**
STREET ADDRESS: Riverside Superior Court
MAILING ADDRESS: County of Riverside
CITY AND ZIP CODE: 4175 Main Street
BRANCH NAME: Riverside, CA 92501

PETITIONER: SHIKIRA SANDERS

RESPONDENT: THELLAS SANDERS III

**NOTICE OF ENTRY OF JUDGMENT**

CASE NUMBER: RID230569

---

You are notified that the following judgment was entered on *(date)* SEP 03 2009

1. [✓] Dissolution
2. [ ] Dissolution—status only
3. [ ] Dissolution—reserving jurisdiction over termination of marital status or domestic partnership
4. [ ] Legal separation
5. [ ] Nullity
6. [ ] Parent-child relationship
7. [ ] Judgment on reserved issues
8. [ ] Other *(specify):*

Date: SEP 03 2009                    Clerk, by _____, Deputy

**—NOTICE TO ATTORNEY OF RECORD OR PARTY WITHOUT ATTORNEY—**

Under the provisions of Code of Civil Procedure section 1952, if no appeal is filed the court may order the exhibits destroyed or otherwise disposed of after 60 days from the expiration of the appeal time.

---

**STATEMENT IN THIS BOX APPLIES ONLY TO JUDGMENT OF DISSOLUTION**
Effective date of termination of marital or domestic partnership status *(specify):* DEC 02 2009
**WARNING: Neither party may remarry or enter into a new domestic partnership until the effective date of the termination of marital or domestic partnership status, as shown in this box.**

---

**CLERK'S CERTIFICATE OF MAILING**

I certify that I am not a party to this cause and that a true copy of the *Notice of Entry of Judgment* was mailed first class, postage fully prepaid, in a sealed envelope addressed as shown below, and that the notice was mailed
at *(place):* Riverside                              , California,   on *(date):* SEP 03 2009

Date: SEP 03 2009                    Clerk, by _____, Deputy

| Name and address of petitioner or petitioner's attorney | Name and address of respondent or respondent's attorney |
|---|---|
| SHIKIRA SANDERS<br>811 Master Way<br>Beaumont, CA 92223<br>In propria persona | THELLAS SANDERS, III<br>4006 Orange St.<br>Riverside, CA 92501 |

| | |
|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>FL-190 [Rev. January 1, 2005] | **NOTICE OF ENTRY OF JUDGMENT**<br>(Family Law—Uniform Parentage—Custody and Support) | Family Code, §§ 2338, 7636, 7637<br>www.courtinfo.ca.gov<br>American LegalNet, Inc.<br>www.USCourtForms.com |

Page 1 of 1

21

FL-180

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*:
**SHIKIRA SANDERS**
811 Master Way
Beaumont, CA 92223

TELEPHONE NO.:                          FAX NO. *(Optional)*:
E-MAIL ADDRESS *(Optional)*:
ATTORNEY FOR *(Name)*: In propria persona

**FOR COURT USE ONLY**

F I L E D
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

SEP 03 2009

SEP 04 2009

SUPERIOR COURT OF CALIFORNIA, COUNTY OF
STREET ADDRESS: 4175 Main Street
MAILING ADDRESS:
CITY AND ZIP CODE: Riverside, CA
BRANCH NAME: Family

MARRIAGE OF
PETITIONER: **SHIKIRA SANDERS**
RESPONDENT: **THELLAS SANDERS, III**

CASE NUMBER:
KED 230569

**JUDGMENT**

☑ DISSOLUTION     ☐ LEGAL SEPARATION     ☐ NULLITY

☐ Status only
☐ Reserving jurisdiction over termination of marital or domestic partnership status
☐ Judgment on reserved issues
Date marital or domestic partnership status ends: DEC 02 2009

1. ☑ This judgment  ☑ contains personal conduct restraining orders  ☐ modifies existing restraining orders.
   The restraining orders are contained on page(s) 5 of the attachment. They expire on *(date)*: 6/15/012

2. This proceeding was heard as follows: ☑ Default or uncontested   ☑ By declaration under Family Code section 2336
   ☐ Contested
   a. Date: SEP 02 2009   Dept.: F501   Room:   ☐ Temporary Judge
   b. Judicial officer *(name)*: BECKY L. DUGAN
   c. ☐ Petitioner present in court          ☐ Attorney present in court *(name)*:
   d. ☐ Respondent present in court          ☐ Attorney present in court *(name)*:
   e. ☐ Claimant present in court *(name)*:          ☐ Attorney present in court *(name)*:
   f. ☐ Other *(specify name)*:

3. The court acquired jurisdiction of the respondent on *(date)*: st [illegible] 6/1/2009
   a. ☑ The respondent was served with process.
   b. ☐ The respondent appeared.

**THE COURT ORDERS, GOOD CAUSE APPEARING**

4. a. ☑ Judgment of dissolution is entered. Marital or domestic partnership status is terminated and the parties are restored to the status of single persons
      (1) ☑ on *(specify date)*: DEC 02 2009
      (2) ☐ on a date to be determined on noticed motion of either party or on stipulation.
   b. ☐ Judgment of legal separation is entered.
   c. ☐ Judgment of nullity is entered. The parties are declared to be single persons on the ground of *(specify)*:

   d. ☐ This judgment will be entered nunc pro tunc as of *(date)*:
   e. ☐ Judgment on reserved issues.
   f. ☐ The ☐ petitioner's ☐ respondent's  former name is restored to *(specify)*:
   g. ☐ Jurisdiction is reserved over all other issues, and all present orders remain in effect except as provided below.
   h. ☐ This judgment contains provisions for child support or family support. Each party must complete and file with the court a *Child Support Case Registry Form* (form FL-191) within 10 days of the date of this judgment. The parents must notify the court of any change in the information submitted within 10 days of the change, by filing an updated form. The *Notice of Rights and Responsibilities—Health Care Costs and Reimbursement Procedures and Information Sheet on Changing a Child Support Order* (form FL-192) is attached.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
FL-180 [Rev. January 1, 2007]

**JUDGMENT**
(Family Law)

Family Code, §§ 2024, 2340, 2343, 2346
www.courtinfo.ca.gov

American LegalNet, Inc.
www.FormsWorkflow.com

22

FL-180

| CASE NAME (Last name, first name of each party): Shikira H Sanders<br>Thellas rs sanders III | CASE NUMBER:<br>RiD 2B0569 |

4. (Cont'd.)

i. ☐ A settlement agreement between the parties is attached.

j. ☐ A written stipulation for judgment between the parties is attached.

k. ☐ The children of this marriage or domestic partnership are:

    (1) ☐ The children of this marriage or domestic partnership are:

        Name                        Birthdate

    (2) ☐ Parentage is established for children of this relationship born prior to the marriage or domestic partnership.

l. ☐ Child custody and visitation are ordered as set forth in the attached

    (1) ☐ settlement agreement, stipulation for judgment, or other written agreement.

    (2) ☐ Child Custody and Visitation Order Attachment (form FL-341).

    (3) ☐ Stipulation and Order for Custody and/or Visitation of Children (form FL-355).

    (4) ☐ other (specify):

m. ☐ Child support is ordered as set forth in the attached

    (1) ☐ settlement agreement, stipulation for judgment, or other written agreement.

    (2) ☐ Child Support Information and Order Attachment (form FL-342).

    (3) ☐ Stipulation to Establish or Modify Child Support and Order (form FL-350).

    (4) ☐ other (specify):

n. ☐ Spousal or partner support is ordered as set forth in the attached

    (1) ☐ settlement agreement, stipulation for judgment, or other written agreement.

    (2) ☐ Spousal, Partner, or Family Support Order Attachment (form FL-343).

    (3) ☐ other (specify):

    NOTICE: It is the goal of this state that each party will make reasonable good faith efforts to become self-supporting as provided for in Family Code section 4320. The failure to make reasonable good faith efforts may be one of the factors considered by the court as a basis for modifying or terminating spousal or partner support.

o. ☑ Property division is ordered as set forth in the attached

    (1) ☐ settlement agreement, stipulation for judgment, or other written agreement.

    (2) ☑ Property Order Attachment to Judgment (form FL-345).

    (3) ☐ other (specify):

p. ☐ Other (specify): ~~And attached~~ Marital Settlement agreement

Each attachment to this judgment is incorporated into this judgment, and the parties are ordered to comply with each attachment's provisions.

Jurisdiction is reserved to make other orders necessary to carry out this judgment.

Date:

                                        JUDICIAL OFFICER

                         ☐ SIGNATURE FOLLOWS LAST ATTACHMENT

5. Number of pages attached: _____

**NOTICE**

Dissolution or legal separation may automatically cancel the rights of a spouse or domestic partner under the other spouse's or domestic partner's will, trust, retirement plan, power of attorney, pay-on-death bank account, transfer-on-death vehicle registration, survivorship rights to any property owned in joint tenancy, and any other similar thing. It does not automatically cancel the rights of a spouse or domestic partner as beneficiary of the other spouse's or domestic partner's life insurance policy. You should review these matters, as well as any credit cards, other credit accounts, insurance policies, retirement plans, and credit reports, to determine whether they should be changed or whether you should take any other actions.

A debt or obligation may be assigned to one party as part of the dissolution of property and debts, but if that party does not pay the debt or obligation, the creditor may be able to collect from the other party.

An earnings assignment may be issued without additional proof if child, family, partner, or spousal support is ordered.

Any party required to pay support must pay interest on overdue amounts at the "legal rate," which is currently 10 percent.

FL-180 [Rev. January 1, 2007]

**JUDGMENT**
**(Family Law)**

23

CASE NAME: Shikira H Sanders
Thellas Sanders III

CASE NUMBER: RID 230569

## MARITAL SETTLEMENT AGREEMENT/ADDENDUM TO JUDGMENT

The parties were married on 1/16/08 and were separated on 5/15/09

### CUSTODY/VISITATION

(Check one)

☒ There are no minor child/ren of the marriage.

☐ Primary and secondary physical custody of the minor child/ren shall be as follows:

| Child's Name: | Birth Date: | Legal Custody to: | Primary Physical Custody to: |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

The other parent shall have the following secondary physical custody rights:

☐ Reasonable right of visitation as agreed between the parties.

☐ As contained in the Recommendation and Order After Mediation, consisting of _____ pages, which was filed on _____ and which is reproduced in its entirety herein.

☐ Other:

### PURSUANT TO FAMILY CODE SECTION 3048 (A)

(1) This Court exercises jurisdiction under Family Code Sections 3421-3424.
(2) Notice and opportunity to be heard were given under Family Code Section 3425.
(3) A clear description of the custody and visitation rights of each party is set forth herein.
(4) Violation of the order may subject the party in violation to civil or criminal penalties, or both.
(5) The habitual residence of the child/ren is the United States of America.

CASE NAME: *Shikira H Sanders* CASE NUMBER: *RiD230569*
*vs.*
*Thellas Sanders III*

## CHILD SUPPORT

☐ **CHILD SUPPORT PAYMENTS.** ☐ Father ☐ Mother shall pay to the other party as and for child support the sum of $ _____ per month, due one-half on the first and one-half on the fifteenth day of each month commencing _____ . The duty of support continues until each child: has attained the age of 18 years and is no longer a full-time high school student, attains the age of 19 years, dies, marries, is emancipated, written agreement of the parties or further order of the court whichever first occurs. Support shall be allocated between the minor children as follows:

$ _____ for the support of the oldest child;

$ _____ for the support of the second child;

$ _____ for the support of the third child;

$ _____ for the support of the fourth child.

☐ **RESERVED.** The issue of child support is reserved for later determination upon noticed motion.

☐ **RESERVED.** The Department of Child Support Services is collecting support for these children, so the court shall reserve Jurisdiction.

☐ **GUIDELINE CHILD SUPPORT FINDINGS.**

☐ Net monthly disposable incomes are as follows: Father's $ _____; Mother's $ _____ . Percentage of time each parent has primary responsibility for the children: Mother: ____ % Father ____ %. ☐ Father is experiencing a statutory hardship of $_____ per month.

☐ Mother is experiencing a statutory hardship of $ _____ per month.

The amount of child support payable by ☐ Father ☐ Mother as calculated under the guideline is $ _____ per month.

☐ **WE AGREE TO NON-GUIDELINE CHILD SUPPORT AS FOLLOWS:** The Parties acknowledge that: (i) they are fully informed of their rights concerning guideline child support; (ii) they have agreed to the child support provisions of this Agreement without coercion or duress; (iii) this Agreement is in the best interests of the child involved; (iv) the needs of the child will be adequately met by this agreed-upon child support; and they have not assigned the right to support to the county and no public assistance application is pending, except as set forth below.

☐ **ARREARS.** ☐ Father ☐ Mother owes to the other Parent child support arrears in the principal sum of $ _____ for the period of _____ / _____ / _____ to _____ / _____ / _____ . These arrears shall be paid as follows: _____

MARITAL SETTLEMENT AGREEMENT/ADDENDUM TO JUDGMENT - Page ____ of

*25*

CASE NAME: Shikira H Sanders vs. Dallas Sanders III    CASE NUMBER: RID 230569

**MEDICAL/DENTAL/VISUAL INSURANCE.** As and for additional child support, ☐ Father ☐ Mother shall obtain and/or maintain for the minor child/ren medical, dental and visual insurance if available at reasonable cost. Any health expenses not paid by insurance shall be shared: Mother 50 % Father 50 %.

## SPOUSAL SUPPORT

☐ **WAIVER.** ☐ Husband ☐ Wife knowingly and intelligently waives spousal support forever. Jurisdiction shall be terminated over spousal support. When a court has no jurisdiction over support, no support can be ordered regardless of the hardship that this might cause.

☒ **TERMINATION.** The courts jurisdiction to award spousal support to the Respondent is terminated.

☒ **RESERVED.** The issue of spousal support is reserved for later determination upon noticed motion.

☒ **SPOUSAL SUPPORT PAYMENTS.** ☒ Husband ☐ Wife shall pay to the other Party for spousal support, the sum of $ _150.00_ per month, payable one-half on the first and one-half on the fifteenth day of each month commencing _11/2009_ , and continuing until the earliest of (i) the death of Payor, (ii) the death of Payee, (iii) the remarriage of Payee, (iv) further order of the Court, or (v) the termination date of: _____.

## PAYMENT OF SUPPORT

An Earnings Assignment for the above support shall issue.

   ☐ The right to support has been assigned to the county or a public assistance application is
       pending.

   ☐ The Department of Child Support Services approves of the foregoing support order.

Date: _____    Signature of Attorney for DCSS: _____

CASE NAME: Shikira H. Sanders   CASE NUMBER: RiD230569
vs.
Thellas Sanders III

## PROPERTY DIVISION

(Check one)

☐ There are no property issues before this Court and the Court shall terminate jurisdiction over property issues.

☐ **COMMUNITY PROPERTY AWARDED TO HUSBAND.**   Husband is awarded as his share of community property the following:

All furniture, furnishings, appliances in possession except as otherwise listed.

☑ **COMMUNITY PROPERTY AWARDED TO WIFE.** Wife is awarded as her share of community property the following: 811 Master Way   Beaumont CA 92223

All furniture, furnishings, appliances in possession except as otherwise listed.

T.V's, painting, appliances, furnisher,
Ford –
Expedition 2001

☑ **COMMUNITY DEBTS:** Each Party shall be responsible for paying any and all obligations secured by property awarded to that Party. Scheduled debts, liabilities, and obligations are to be paid as follows:

**DEBTS TO HUSBAND.** Husband shall pay and hold Wife harmless from the following obligations:

NONE

MARITAL SETTLEMENT AGREEMENT/ADDENDUM TO JUDGMENT - Page _____ of

27

CASE NAME: Shikira H Sanders
vs
Thellos Sanders III

CASE NUMBER: Ri.D. 230569

**DEBTS TO WIFE:** Wife shall pay and hold Husband harmless from the following obligations:

☒ **SEPARATE PROPERTY.** The following is confirmed to Shikira Ha as his/her separate property: 3143 N Sanchez St San Bernardino CA 92404

☒ **OTHER ORDERS:**

Tax Refund for 2008 to be awarded to Wife. Shikira Sanders.

This judgment may be signed by a Court Commissioner as a Judge Pro Tem.

**THE UNDERSIGNED PARTIES APPROVE AS TO FORM AND CONTENT:**

Shn M Sanders     7/23/09

| Husband | Date | Wife | Date |
|---|---|---|---|

☒ Husband was not present & his signature is not required     ☐ Wife was not present & her signature is not required

MARITAL SETTLEMENT AGREEMENT/ADDENDUM TO JUDGMENT - Page _____ of

CASE NAME: Shikira H Sanders
v.
Thellas Sanders III

CASE NUMBER: RID 230569

*(If this is a Marital Settlement Agreement, check one)*

☐ This Marital Settlement Agreement is NOT pursuant to a Default, and NEITHER party's signature must be notarized.

☐ This Marital Settlement Agreement IS pursuant to a Default, and the DEFAULTING PARTY'S signature must be notarized.

STATE OF CALIFORNIA

COUNTY OF RIVERSIDE

On _____ , before me, the undersigned, a Notary Public in and for said State, personally appeared _____ personally known to me (or proven to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____ (Seal)

*Signature*

**THIS MARITAL SETTLEMENT AGREEMENT/ADDENDUM TO JUDGMENT IS ORDERED INCORPORATED INTO AND MADE A PART OF THIS JUDGMENT AND THE PARTIES ARE ORDERED TO COMPLY WITH ALL OF THE EXECUTORY TERMS.**

_____     _____
*Judge/Commissioner*                              Date

MARITAL SETTLEMENT AGREEMENT/ADDENDUM TO JUDGMENT - Page ___ of ___

29

ORIGINAL

T.T.
37-39

GROUND ONE

1    MR. MICALLEF:  The connection is that if she can have

2 Mr. Sanders arrested, he is incarcerated, she can file the

3 appropriate documents immediately.  She can then serve a default

4 upon him where he cannot act upon the default, and she can

5 subsequently obtain the property in her name through the

6 application of the adverse possession, mechanic's lien,

7 lis pendens, and --

8    .THE COURT:  See, you have all those documents listed.

9 We are not going to get into that.  Because some of these jurors

10 may know, but I imagine most of them don't know what a

11 lis pendens is or a mechanic's lien is, or what legal effect it

12 might have on a property.  And we are not going to go there.

13    MR. MICALLEF:  I don't need to get into the specifics

14 of it, Your Honor.

15    THE COURT:  We are not going to get into it at all.

16 It's not relevant.  I think under Evidence Code Section 352,

17 it's extremely derivative.  It's time-consuming.  It's

18 confusing.  It's not sufficiently relevant.

19    I am going to allow you to ask her in general terms

20 about has she tried to get the property in her own name, maybe

21 what efforts she has gone to accomplish that.  But we are not

22 going to go through all of these specific documents.

23    It's not sufficiently relevant.  Again, it's too

24 time-consuming.  It's too extraneous and irrelevant.  And who is

25 going to tell the jury what a lis pendens is?  Who is going to

26 tell the jury what a mechanic's lien is and the legal effect it

27 has?

28    MR. MICALLEF:  Actually, Miss Sanders could explain

1 that because she is going to file the documents.

2          THE COURT:  We are not even going to go there.

3          MR. MICALLEF:  Your Honor, may I ask this?

4          THE COURT:  Go ahead.

5          MR. MICALLEF:  If I do inquire with Miss Sanders in

6 regards to these documents, or not the specifics, but the steps

7 she has taken and the process she has undergone and the

8 complexity thereof, and she denies either filing these documents

9 or claiming that she doesn't have knowledge of the complexities

10 of this process, can I then impeach her with these particular

11 documents?

12          THE COURT:  I don't know.  I will have to hear what she

13 has to say.  And I will have to hear what the relevance is with

14 respect to the impeachment.

15          I understand and appreciate your argument or position

16 that supposedly she is fabricating all of this stuff in some

17 attempt, I guess, to obtain the property in Beaumont.  I mean,

18 the property in San Bernardino is hers anyway.  She owned it and

19 possessed it before she got married.

20          MR. MICALLEF:  I understand.

21          THE COURT:  So there is no legal issue there.

22          MR. MICALLEF:  Well, actually, Your Honor, she was

23 making payments on it while she was married, so it makes it

24 quasi community.

25          THE COURT:  Only if it came out of a community asset.

26          MR. MICALLEF:  Well, she was making payments on the

27 home while she was married to Mr. Sanders.

28          THE COURT:  All right.  But she was employed.

1          MR. MICALLEF:  I understand that, regardless of whether

2  Mr. Sanders is employed or not, it's still quasi community.

3          THE COURT:  We are not going there, Mr. Micallef.

4  That's so tenuous.  Then we would have to get into the

5  valuations of the properties, are they upside down, and what's

6  the mortgage outstanding?

7          MR. MICALLEF:  Your Honor, I believe that's relevant in

8  regards to this instance, Miss Sanders' property in

9  San Bernardino, because she is upside down on the property.

10          THE COURT:  How do you know that?

11          MR. MICALLEF:  Based on the documentation she submitted

12  to the Court.

13          THE COURT:  Well, we are not going to do that.  We are

14  not going to go there.  We are not going to do that.

15          MR. MICALLEF:  Now, in regards to the fact that she

16  had -- as a result of her house being upside down and her either

17  credit being affected as a result of that, I believe it's

18  relevant that that is, again, part of her motive to have

19  Mr. Sanders obtain the house in Beaumont.

20          THE COURT:  Well, like I said, you can ask her about

21  her attempts to put the house in Beaumont in her sole name, and

22  what efforts in general she made to accomplish that.

23          MR. MICALLEF:  But it was purchased in just

24  Mr. Sanders' name as a result of her credit being deteriorated

25  based on her purchase of the first house.

26          THE COURT:  You can ask her about the purchase of the

27  home and whose name it was put in, or what she was aware of, or

28  what her understanding was, things of that nature.  I am going

ORIGINAL

T. T.

Ground One

225-227

1 name; correct?

2     A.    Correct.

3     Q.    It was purchased in Mr. Sanders' name; correct?

4     A.    Correct.

5     Q.    Why was that?

6     A.    In order for us to qualify for the first-time home

7 buyer's program.

8     Q.    Okay.  So when you say "us," you mean you were aware

9 that Mr. Sanders was buying this property; correct?

10    A.    Correct.

11    Q.    And it was while the two of you were married; correct?

12    A.    Correct.

13    Q.    And you knew that if you got it in your name, because

14 you already owned a home, you wouldn't qualify for the

15 first-time buyer's program?

16         MS. DITTRICH:  Objection.  Vague.

17         THE COURT:  Overruled.  If she understands the

18 question, she can answer.

19         THE WITNESS:  I don't understand the question.  I am

20 sorry.

21    Q.    (BY MR. MICALLEF)  Yes.  As far as -- you mentioned the

22 first-time home buyer's program; correct?

23    A.    Correct.

24    Q.    That's a financial incentive or bonus or better terms

25 on a loan for first-time buyers; correct?

26    A.    Correct.

27    Q.    And you just testified that the house you purchased in

28 Mr. Sanders' name alone so that the -- you could qualify for

1   that on the loan; correct?

2       A.   Correct.

3       Q.   Okay.  Now, in regards to the paperwork, or doing the

4   loan documentation for the Beaumont residence, were you involved

5   in that at all?

6       A.   Yes.

7       Q.   Okay.  Please tell us about your extent of being

8   involved in the Beaumont property paperwork.

9           MS. DITTRICH:  Objection.  Vague.

10          THE COURT:  Sustained.

11      Q.   (BY MR. MICALLEF)  Okay.  Were you present when the

12  documents were filled out?

13          MS. DITTRICH:  Objection.  Vague.

14          THE COURT:  Sustained.

15      Q.   (BY MR. MICALLEF)  Did you sit down with Mr. Sanders at

16  any time when you were doing loan documents for the Beaumont

17  property?

18      A.   Yes.

19      Q.   Was it just one meeting or were there several meetings?

20      A.   There were several meetings.

21      Q.   Okay.  Can you tell us approximately how many of those

22  meetings you were present for.

23          MS. DITTRICH:  Objection.  Relevance.

24          THE COURT:  Sustained.

25      Q.   (BY MR. MICALLEF)  At any time prior to the submission

26  of the Beaumont property mortgage documents, did you review the

27  documents?

28      A.   Yes.

1    Q.   When you reviewed the documents, you were aware that

2  the Beaumont property loan documents were being made in

3  Mr. Sanders' name; correct?

4    A.   Correct.

5    Q.   Isn't it true you ultimately are the one that submitted

6  the Beaumont property loan documents to the lender?

7    A.   No.

8    Q.   Do you know a Charles Vamadeva?

9    A.   Yes.

10    Q.   Isn't it true you were referred to Mr. Vamadeva through

11  your sister?

12    A.   Yes.

13    Q.   He is the person that did the loan paperwork on the

14  Beaumont property; correct?

15    A.   Correct.

16    Q.   Now, prior to the paperwork or the house being

17  finalized for sale, you had to submit a down payment on the

18  Beaumont property; correct?

19    A.   Correct.

20    Q.   Now, you testified earlier that you work for Bank of

21  America; correct?

22    A.   Correct.

23    Q.   And you are a bank branch manager; correct?

24    A.   Correct.

25    Q.   Now, in your capacity as a bank branch manager, do you

26  handle loans?

27    A.   No, I do not.

28    Q.   You supervisor people who do loans?

227

ORIGINAL

T. T.

207

1  that supports that fact?

2          MS. DITTRICH:  That she was granted the home?

3          THE COURT:  That she was awarded the home -- using your

4  language, that she was awarded the home pursuant to the family

5  law judge making that order.  Do you have that order?

6          MS. DITTRICH:  I don't have that order.  I have the --

7  within the documents, I have the judgment granting her the home,

8  giving her the home.

9          THE COURT:  Okay.  Well, that's what I am asking for.

10         MS. DITTRICH:  Yeah.  That's actually in defense's

11 exhibits also, his BB exhibit.

12         THE COURT:  I don't have any of the exhibits.  I don't

13 think they have been marked.  They might have come up.

14         Well, I have a copy of the defense exhibits, but mine

15 aren't marked.  So BB -- are they in order?

16         MR. MICALLEF:  They were originally, I believe, Your

17 Honor.

18         THE COURT:  Okay.  Hold on a second, then.

19         What is the date of that order?

20         MS. DITTRICH:  9-3-09.

21         THE COURT:  I am looking at --

22         MS. DITTRICH:  This is where I was getting it from,

23 Your Honor, RID230569.

24         THE COURT:  Well, that's the whole case file number.

25         MS. DITTRICH:  Okay.  On page -- the pages aren't

26 marked, but it does say, "Community property awarded to wife,"

27 which is where I got the language I was using that -- where I --

28 if I mistakenly said something legally incorrect with regards to

Groundone

T.T.
204·223

1  you have so many other things going on that I can't continue to

2  cry about it.  I can't continue -- I have got to -- I have my

3  children.  I have to just move on.  I have to go through with

4  the divorce and just go on with my life.  I can't focus on this

5  part of my life anymore.

6     Q.   Would you say are you angry at the defendant?

7     A.   No, I am not angry at him.  I just would like him to

8  just go on with his life more -- just go on with your life.  I

9  am going to go on with my life.  And that's it.

10    Q.   Are you trying in any way to humiliate him or get back

11 at him?

12         MR. MICALLEF:  Objection.  Leading.

13         THE COURT:  Sustained.

14    Q.   (BY MS. DITTRICH)  Why are you testifying today?

15    A.   I am testifying because -- I mean, for one, I have to.

16    Q.   I am making you; right?

17    A.   Yeah.  Like I didn't think -- I didn't know I had a

18 choice.  If it was my choice, I wouldn't be here.  Had I known,

19 had I been told, I would have filed for divorce in November.  I

20 would have gone on with my life.  Yes, I love my daughter with

21 all my heart, but, no, I wouldn't have had her -- I wouldn't

22 have -- I wouldn't have -- we wouldn't have purchased a house in

23 Beaumont -- the Beaumont house --

24         MR. MICALLEF:  Object as narrative.

25         THE COURT:  Sustained.

26    Q.   (BY MS. DITTRICH)  Let me ask you this:  Do you get

27 ~~anything if the defendant is successfully prosecuted~~?

28    A.   ~~No.~~

204

1    Q.   After filing for divorce, did you -- did the family law
2 award you the Beaumont house?

3    A.   Yes.

4    Q.   So you right now have sole custody of that house?

5    A.   Yes.

6    Q.   So if you didn't testify today or yesterday you would
7 still have the Beaumont house?

8    A.   Yes.

9    Q.   Okay.

10        MS. DITTRICH:   I have no other questions, Your Honor.

11        THE COURT:   All right.   Mr. Micallef,
12 cross-examination?

13        THE WITNESS:   I am sorry, may I take a break to go to
14 the restroom?

15        THE COURT:   All right.   Let's take our midmorning break
16 at this point in time for about 15 minutes.   We will come back
17 at 10:45.   Please remember the admonitions not to discuss the
18 case, nor form or express any opinions about the case.   We will
19 see everyone back here at 10:45.

20                     (Recess.)

21                (Out of the presence of the jury.)

22        THE COURT:   We are back on the record in the case of
23 the People versus Thellas Sanders.   Mr. Sanders is present.
24 Both counsel are present.   We are out of the presence of the
25 jury.

26        There is something, again, counsel wanted to discuss on
27 the record out of the presence of our jury?

28        MR. MICALLEF:   Yes, Your Honor.   I requested to discuss

1 this matter. Previously the Court had ruled that my exhibits
2 were inadmissible, and the Court stated you would withhold your
3 ruling or modify it based on the testimony of the complaining
4 witness.

5     I don't know how the Court would like us to proceed in
6 regards to me. I intend to inquire with the complaining witness
7 in regards to some specifics contained in the documents. But as
8 far as being able to present them at any time, because madam
9 clerk has not marked any of the exhibits at this time, I don't
10 know just procedurally how the Court would want to handle this
11 prior to actually going through the basis of doing it during the
12 trial.

13     THE COURT: Well, again, I am not even sure of the
14 relevance, Mr. Micallef, of most of your documents that you
15 had -- that we had previously discussed, I guess.

16     But let me ask the People something. Right at the end
17 of Miss Sanders' testimony, Miss Dittrich, you asked her a
18 question if the family law court had made an order basically
19 awarding her the Beaumont home.

20     MS. DITTRICH: Just like with regards to the divorce
21 proceedings. If I misstated -- it was family law, I don't even
22 know how she was awarded the house, if it was through -- I
23 believe it was through family law that she was given.

24     THE COURT: That's what she testified to and that's
25 what you asked her. I think your wording was, "Did the family
26 law court award you the Beaumont home?"

27     MS. DITTRICH: Okay.

28     THE COURT: Do you have documentation and paperwork

1  that supports that fact?

2      MS. DITTRICH:  That she was granted the home?

3      THE COURT:  That she was awarded the home -- using your

4  language, that she was awarded the home pursuant to the family

5  law judge making that order.  Do you have that order?

6      MS. DITTRICH:  I don't have that order.  I have the --

7  within the documents, I have the judgment granting her the home,

8  giving her the home.

9      THE COURT:  Okay.  Well, that's what I am asking for.

10     MS. DITTRICH:  Yeah.  That's actually in defense's

11 exhibits also, his BB exhibit.

12     THE COURT:  I don't have any of the exhibits.  I don't

13 think they have been marked.  They might have come up.

14     Well, I have a copy of the defense exhibits, but mine

15 aren't marked.  So BB -- are they in order?

16     MR. MICALLEF:  They were originally, I believe, Your

17 Honor.

18     THE COURT:  Okay.  Hold on a second, then.

19     What is the date of that order?

20     MS. DITTRICH:  9-3-09.

21     THE COURT:  I am looking at --

22     MS. DITTRICH:  This is where I was getting it from,

23 Your Honor, RID230569.

24     THE COURT:  Well, that's the whole case file number.

25     MS. DITTRICH:  Okay.  On page -- the pages aren't

26 marked, but it does say, "Community property awarded to wife,"

27 which is where I got the language I was using that -- where I --

28 if I mistakenly said something legally incorrect with regards to

1        But it does appear -- I mean, that can lead one to

2   reasonably assume and believe that certain exhibits were

3   submitted to Judge Dugan during the course of these proceedings

4   that she reviewed and considered in ultimately making her

5   decision.

6        MR. MICALLEF:  One of the exhibits that was submitted,

7   Your Honor, as far as what she says on the -- it's the

8   mechanic's lien that was submitted by her, that was part of her

9   document, the --

10       THE COURT:  Right.  The --

11       MR. MICALLEF:  The complaint to quiet title.

12       THE COURT:  It says that's Exhibit 6, yes.

13       MR. MICALLEF:  Then there is a uniform trade

14   certificate stating that there is a lien for $8,482.74.  That

15   was the document that was prior to that.

16       THE COURT:  Well, I think it's clear someone was making

17   the mortgage payments while he was in custody, I am presuming.

18   I don't know.

19       MR. MICALLEF:  This all occurred before that time, Your

20   Honor.

21       THE COURT:  Again, I don't know who was making the

22   mortgage payments while they were living there.  Do you?

23       MR. MICALLEF:  No, I don't, Your Honor.

24       THE COURT:  Again, that's part of the problem that we

25   have here.  Well, like I said, I am going to ask -- I am going

26   to allow you to ask questions about how the house was purchased

27   and the financial arrangements regarding the initial purchase of

28   that property, what she was aware of or not -- or wasn't aware

1 of with respect to how title was prepared with respect to the

2 purchase of that property.  But again, I am going to be real

3 hesitant and reluctant to get into any of these family law

4 documents.

5        MR. MICALLEF:  That's fine.  May I address one other

6 issue?

7        THE COURT:  Sure.

8        MR. MICALLEF:  I was provided yesterday with a document

9 by the People in regards to the sugar-in-the-gas-tank allegation

10 part of Miss Sanders.  And that document was actually introduced

11 today.  Miss Sanders spoke of the amount of the damage to the

12 vehicle as a result of the sugar in the gas tank.

13        THE COURT:  Right.  We talked about that yesterday

14 morning, yes.

15        MR. MICALLEF:  Will I be allowed to inquire into that

16 incident with Miss Sanders?

17        THE COURT:  Sure.  The People wanted to present it.

18 It's open season for the defense to ask her about that.

19        MR. MICALLEF:  I just wanted to make sure, Your Honor.

20        THE COURT:  All right.

21        And a couple things.  I am going to ask you,

22 Miss Dittrich, to advise Miss Sanders to listen to the question

23 that's asked of her and answer only that question, not to

24 volunteer information, please.

25        MS. DITTRICH:  Okay.

26        THE COURT:  I mean, everyone can follow up with more

27 questions.  And you will have a chance to redirect her.  But she

28 needs to stay focused and stay on track.  Sometimes she has been

1 having a problem with that.

2        And secondly, Mr. Micallef, whenever Miss Sanders was

3 testifying to statements made by your client, you would object

4 on hearsay grounds.  And it is hearsay, but it's being offered

5 by a party opponent, therefore it qualifies as an admission.

6        MR. MICALLEF:  I understand.

7        THE COURT:  All right.

8        MS. DITTRICH:  Thank you.

9        THE COURT:  Why don't you take a minute to talk to

10 Miss Sanders, please.  Then we will bring in the jury.

11                    (In the presence of the jury.)

12        THE COURT:  All right.  All of our jurors have now

13 joined us.

14        And Mr. Micallef, if you would like to conduct

15 cross-examination.

16        MR. MICALLEF:  Yes.  Thank you, Your Honor.

17                    **Cross-Examination By Mr. Micallef**

18    Q.    Good morning, Miss Sanders.

19    A.    Good morning.

20    Q.    Now, one of the last questions Miss Dittrich asked you

21 prior to us taking a break was you were awarded the Beaumont

22 property in the family law process; correct?

23    A.    Yes.

24    Q.    Isn't it true that you specifically requested to be

25 awarded that property?

26    A.    Yes.

27    Q.    Isn't it true that you specifically requested that you

28 be awarded 100 percent of that property?

ORIGINAL

T. T.

30-43

1 | for the next week or two.  All right.

2 |       Getting back to the defense exhibit list, or defense

3 | evidence that they seek to introduce.

4 |       Which items do you object to, Miss Dittrich?

5 |       MS. DITTRICH:  Looking at defense exhibit list, I

6 | object to E, F, G, H, J, K, N, P, Q, R, T, U, V, W -- I can't

7 | recall -- I have to review X -- Y, and that's -- that's my

8 | objection.  Those are my objections, Your Honor.

9 |       Basically, I am willing to stipulate with defense to

10 | certain actions and dates and time.  If defense and I can come

11 | to an agreement that the defendant and the victim were married

12 | on such and such a date, that she filed for a divorce, that --

13 | or, you know, before that a TRO was issued, then she filed for

14 | divorce, then their divorce was dissolved on such and such a

15 | date, I don't mind that.

16 |       The essence of my objection, Your Honor, is defense is

17 | wanting to introduce multiple court documents that are

18 | confusing, not relevant, and they go into finances and different

19 | things of the victim and defendant that I can't even make up and

20 | understand what they mean, let alone having that explained to a

21 | jury.

22 |       I don't see what the point is of having documents

23 | introduced from 2008, or even -- I really don't even see the

24 | relevance of having the divorce papers introduced except to just

25 | show that she is really wanting to end the relationship.

26 |       But I just think that all of the documents combined are

27 | confusing.  I don't understand their relevance.  I think that

28 | defense is trying to show that Mr. Sanders is somehow filing too

1 many documents with the Court or something, and trying to get at

2 the defendant.

3          And he is trying to do that through this paper trail,

4 where I would have to bring in, you know, a divorce lawyer or

5 someone to say that this is normal, that people file multiple

6 documents when they are going through a divorce.  I mean, I just

7 don't see really what the point is.

8          THE COURT:  All right.  Let me ask this.  I am assuming

9 the divorce has been finalized -- final judgment has been

10 entered?

11          MR. MICALLEF:  I believe, Your Honor, it's pending.  I

12 think December is when it will be actually finalized.

13          THE COURT:  What about the property settlement?

14          MR. MICALLEF:  I believe that was obtained through a

15 default and filed in September.

16          THE COURT:  All right.  Well, I can tell you this.  We

17 are not going to relitigate the dissolution before this jury.

18 But I will go through these exhibits individually.

19          Let's start with your No. E from your exhibit list,

20 Mr. Micallef.  That's a restraining order.

21          I thought you weren't going to have any objection to

22 that, Miss Dittrich?

23          MS. DITTRICH:  E is a petition for the dissolution of

24 marriage filed in November of '08.  That's what --

25          THE COURT:  I am -- I don't have any of these documents

26 in front of me.  All I am looking at is his list, and in this

27 list E is a restraining order after hearing.

28          MS. DITTRICH:  No.  I must have a different list than

1  you do, Your Honor.

2          MR. MICALLEF:  I apologize, Your Honor, if you have a

3  different list than I have here.

4          THE COURT:  That's not a good thing.  Let's work off

5  the same list.

6          MR. MICALLEF:  That would be my apologies, Your Honor.

7          THE COURT:  So do I have the wrong list?

8          MR. MICALLEF:  Let me --

9          MS. DITTRICH:  He probably has the one from yesterday.

10          MR. MICALLEF:  It's possible.

11          THE COURT:  This list is dated October 5th, 2009.

12          MR. MICALLEF:  Today is the 6th, so that may be the

13  incorrect one.  I apologize, Your Honor.

14          THE COURT:  Do you have another one?

15          MR. MICALLEF:  I do.  I will give you my copy here.

16          THE COURT:  We can make a copy.

17          MR. MICALLEF:  There should be a copy with the Court

18  that actually I put with the list.

19          THE COURT:  All right.  Now I have the new and improved

20  defense exhibit list.

21          MS. DITTRICH:  Would you like me to give my correct

22  objections then, Your Honor?

23          THE COURT:  No.  I am presuming your correct objections

24  were the ones you previously identified for me; correct?

25          MS. DITTRICH:  Yes.  But they are different on your

26  list.  So, I am objecting to E, which is the --

27          THE COURT:  No.  But you are still going to be

28  objecting to the same ones you said before?

1      MS. DITTRICH:  Yes.

2      THE COURT:  All right.

3      MS. DITTRICH:  Okay.

4      THE COURT:  Okay.  Then let's talk about E, the

5  petition for dissolution of marriage.  What's the relevance of

6  that, Mr. Micallef?

7      MR. MICALLEF:  One of the relevances, Your Honor, is

8  that establishing the length of the relationship up to that

9  point.  This states that they had been married for nine years --

10  excuse me, nine months up to that point, when they first filed

11  initially for divorce.

12      MS. DITTRICH:  I am sorry, what -- what did you say?

13      MR. MICALLEF:  That she was in the relationship -- was

14  married for nine months prior to filing for a divorce initially.

15      MS. DITTRICH:  Okay.

16      THE COURT:  Right.  But is that an issue in

17  controversy?

18      MR. MICALLEF:  I don't know that it is, Your Honor.

19  Again, on some of these issues I can certainly cross-examine

20  Miss Sanders.  And rather than -- if she has a contrary

21  statement or inconsistent statement, I can impeach her with

22  these documents.  But I provided them for Miss Dittrich because

23  I don't like to have a surprise come up in regards to which

24  documents I intend to introduce.

25      THE COURT:  Right.  And I appreciate that.  And that's

26  a better way to proceed as well.  But again, almost all of these

27  documents relate to the dissolution.  And as I have indicated

28  before, we are not going to get into property settlements and

1 things of that nature.

2     MR. MICALLEF:  I guess, Your Honor, why I am including

3 these things and why I believe they are relevant is to

4 establish, say for example on the schedule of assets and debts,

5 which is H, it sets out -- and this is filled out in pro per by

6 Miss Sanders.  So no one assisted her with this.  She actually

7 filled this out, these documents, what she considers to be her

8 separate property and what items she believes she is entitled to

9 in this particular instance.  And then in the actual dissolution

10 of marriage that's filed subsequently, if there is any

11 inconsistencies with that, or whether there are consistencies

12 with that.

13     THE COURT:  Who cares?

14     MR. MICALLEF:  I believe it's relevant, Your Honor, in

15 regards to that there is a genuine issue of motive in this

16 particular instance, and these documents help to corroborate

17 that motive.

18     THE COURT:  But the thing is, the family law judge

19 ultimately makes a decision on the division of assets after

20 conducting hearings --

21     MR. MICALLEF:  I understand, Your Honor.

22     THE COURT:  -- and receiving declarations and testimony

23 and evidence.  And I have never been a family law judge, nor do

24 I ever want to be --

25     MR. MICALLEF:  I am not trying to say that these things

26 should not be distributed the way that they are alleged.  I

27 guess that I want the evidence in case she gives me an

28 inconsistent answer, which is this was -- this particular piece

1  of property you believe was yours, or who this belonged to.

2          THE COURT:  Well, but again, what's the relevance?

3          MR. MICALLEF:  Again, it's --

4          THE COURT:  We are not going to go through each item of

5  property and determine who is the rightful owner or in

6  possession of it.  This is not a divorce proceeding.

7          MR. MICALLEF:  I don't intend to do that, Your Honor.

8          THE COURT:  What do you intend to do, Mr. Micallef?

9          MR. MICALLEF:  Specifically, I would offer as proof to

10  the Court that the residences in this particular instance,

11  Miss Sanders had purchased a residence prior to being married to

12  Mr. Sanders in this instance, which she lists as separate

13  property.  That's located in San Bernardino.

14          A house is subsequently purchased while they are

15  married in Beaumont where this incident is alleged to have

16  occurred.

17          In the dissolution proceedings for 2009, when she files

18  her second set of paperwork, she has her original residence

19  listed as separate property.  She lists the new residence, which

20  was purchased at the time that they were married as her

21  property, that she should have title to this property, even

22  though it was purchased at the time that they were married.  And

23  it was purchased in Mr. Sanders' name.

24          She also alleges that Mr. Sanders perpetrated a fraud

25  upon her, which again goes to her credibility in regards to what

26  she has to say, that he perpetrated fraud in the purchase of the

27  house.

28          And I wanted to include these documents because I

1 believe they demonstrate her sophistication in the loan process,

2 as well as the legal process, for obtaining the property, and

3 the methodology involved.

4       THE COURT: Okay. But, again, from what counsel

5 indicated, she works at a bank or something; correct?

6       MS. DITTRICH: She is a branch manager.

7       MR. MICALLEF: She used to be a loan officer.

8       THE COURT: So she is conversant with all this stuff.

9 That's all well and good. But how is it relevant to any issues

10 in this case?

11       MR. MICALLEF: Again, Your Honor, that I believe it's

12 part of a bias and it's a pattern of behavior that begins where

13 the allegations are that this physical abuse begins or gets to

14 a --

15       THE COURT: You said it begins on the honeymoon.

16       MR. MICALLEF: It gets to a crescendo at a certain

17 point. Then at that point she wants to proceed forward, then

18 she files the aforementioned documents. And then at that point

19 I believe it's relevant to show her intent and her bias and her

20 motive to state the things that she says and give the testimony

21 she gives.

22       THE COURT: But you need to be much more specific than

23 that. So if I understand you correctly, your argument or your

24 position is, then, she has fabricated all of this stuff about

25 the physical abuse and the gun because she wants to get the

26 Beaumont property in her own name?

27       MR. MICALLEF: That's correct.

28       THE COURT: I don't understand the connection.

1  to allow you to go into that in general terms, even though I

2  think it's marginally relevant.  I will allow you to do that.

3  But we are not going to go through each one of these specific

4  documents and have them submitted to the jury.

5          MR. MICALLEF:  I would just ask for the Court's leeway

6  in regards to possible impeachment either --

7          THE COURT:  Again, we will cross that bridge if and

8  when we get to it.  If there is a specific document that you

9  think is relevant to impeach her based upon her testimony at

10 trial, then I will evaluate that and make a ruling at that point

11 in time.  But right now, I am not going to allow a Uniform Trade

12 Certificate you have marked as Exhibit R.  I don't even know

13 what that is.

14         MR. MICALLEF:  Nor do I, Your Honor.

15         THE COURT:  Well, so how can we expect the jury to

16 understand it, its meaning or force or legal effect?  And so we

17 are not doing that.

18         The same thing with default judgments and things of

19 that nature.  I think when maybe the divorce was first filed,

20 when it became final, maybe that's relevant.

21         MR. MICALLEF:  Your Honor, I would argue that the --

22 the fact that she was able to obtain a default because

23 Mr. Sanders has been incarcerated is relevant.

24         THE COURT:  You can ask her that.  "Isn't it true you

25 had a default judgment on whatever date?"

26         MS. DITTRICH:  But that's assuming that she would even

27 know -- I mean --

28         THE COURT:  She knows.

1          MS. DITTRICH:  Okay.  I mean, I don't know that someone
2  can't respond while they are in custody.  Can't you have an
3  attorney go and appear for him, or family member, somebody?
4          THE COURT:  Sure.  It is kind of tough, though, when
5  you are in custody.
6          MS. DITTRICH:  I understand that.  But he has had
7  visitors to come in to visit him during the jail.  His mom talks
8  to him.
9          THE COURT:  I understand that.  Do you think you need a
10  family law judge to visit him in jail?
11          MS. DITTRICH:  I am not suggesting that, Your Honor.  I
12  am just saying in order for -- to get a default judgment, what,
13  with their divorce?  I don't understand.
14          Are you saying it's for the property?
15          MR. MICALLEF:  Yes.
16          MS. DITTRICH:  Well, that's fine.  The defendant didn't
17  have employment during their marriage anyway.
18          THE COURT:  Well, that is going to come out, isn't it?
19          MS. DITTRICH:  Yeah.  It would have to if he is going
20  to inquire.
21          THE COURT:  I understand.  But I am going to, you know,
22  limit this kind of stuff to a certain extent.  We are going far
23  afield here, folks.
24          MS. DITTRICH:  I am not -- I am happy if we don't want
25  to even go into that at all.
26          THE COURT:  I understand.  But like I said, I think the
27  defense is claiming that she is making all this stuff up to get
28  the Beaumont property in her name.  Well, good luck selling that

1 to the jury.  But I am going to give you that opportunity, but

2 in limited fashion.

3        MR. MICALLEF:  I understand, Your Honor.

4        THE COURT:  So we will see where it goes.

5        What about P?  Defense P in their list, Answer to

6 Temporary Restraining Order?

7        MS. DITTRICH:  That, Your Honor, is the defendant's

8 response to the victim's filing of the restraining order.

9        THE COURT:  All right.  And it's hearsay.

10        MS. DITTRICH:  Yes.

11        THE COURT:  Not admissible.

12        MS. DITTRICH:  Thank you.

13        THE COURT:  Right.

14        Income and expense declarations.  I am not going to

15 allow those.

16        X you were unsure of, Miss Dittrich, the Marital

17 Settlement Agreement?

18        MS. DITTRICH:  Yeah, I have to look at that one again,

19 Your Honor.  Again, I am willing to stipulate that she filed for

20 divorce on the certain date and that their divorce is going to

21 be final on whatever.  I don't --

22        THE COURT:  Let me ask this.  What's the status of the

23 Beaumont property right now?

24        MR. MICALLEF:  She is residing in it, Your Honor.

25        THE COURT:  I don't care where she is living.  What's

26 the legal status of it?

27        MR. MICALLEF:  She obtained a default when she filed

28 the appropriate documents to have it put into her name.  I don't

1 know if that's been finalized yet, but she is certainly in the

2 process of doing so.  And in this dissolution marital settlement

3 agreement, she asks for the house to be placed in her property

4 as her separate property.

5          THE COURT:  Okay.

6          MR. MICALLEF:  And she also asked for the tax return

7 for 2008.

8          THE COURT:  Well, she is the only one working getting

9 the income, isn't she entitled to it?

10          MR. MICALLEF:  Not the entire one, Your Honor, it's

11 community property.

12          THE COURT:  The jury is going to love to hear that.

13          MR. MICALLEF:  Every housewife that doesn't work is

14 entitled to the same amount as the husband that works.  If you

15 remember back in --

16          THE COURT:  Ain't community property grand?

17          MR. MICALLEF:  Yeah.

18          THE COURT:  Well, you can ask her those questions, but

19 we are not going to -- I am imagining the marital settlement

20 agreement, without looking at it, has a lot of other information

21 that's total irrelevant.

22          MR. MICALLEF:  Your Honor, if she is honest with what

23 information she put down there, I don't think it will be a

24 problem.  But I wanted to have it available to impeach her with

25 this.

26          THE COURT:  I understand.  But like I said, I am going

27 to limit you, Mr. Micallef.

28          MR. MICALLEF:  I understand, Your Honor.

Ground one

ORIGINAL

T. T.

208-216

1 family law proceedings, I apologize.

2       THE COURT:  No.  I don't know.  That's why I am asking.

3       MS. DITTRICH:  No.  I -- I can show the Court.

4       THE COURT:  I am looking at an order dated

5 September 3rd, 2009.  And it just says --

6       MS. DITTRICH:  There is a --

7       THE COURT:  -- "Property division is ordered as set

8 forth in the marital settlement agreement."

9       MR. MICALLEF:  That is attached as well, Your Honor,

10 that is --

11       THE COURT:  It's not attached to my copy.

12       MR. MICALLEF:  No, not there.  It is actually -- the

13 marital settlement agreement was filed on 7-23-09.  That would

14 be X.

15       THE COURT:  That would be what?

16       MR. MICALLEF:  X, as in X-ray.

17       MS. DITTRICH:  I can show the Court where I got that

18 language, Your Honor.

19       THE COURT:  I am looking for the marital settlement

20 agreement.

21       MS. DITTRICH:  Yes.  The actual marital settlement

22 agreement, on the very bottom it might help you find it.  It has

23 it written on the bottom.

24       THE COURT:  Why don't one of you give it to me,

25 because, you know --

26       MR. MICALLEF:  I apologize, Your Honor.

27       THE COURT:  -- I am not going to waste my time going

28 through all these documents from family law court.

MS. DITTRICH:· Let me just show defense.  This is the one I was referring to.  And then on the -- this last page right here, "Community property awarded to wife."  Okay.

4      THE COURT:  Because I don't seem to have it up here.

5      MS. DITTRICH:  It's the second to the last page of that
6 document, Your Honor.

7      THE COURT:  All right.  All right.  Well, in reviewing
8 the marital settlement agreement document, it does appear that
9 it was, in fact, signed by Judge Becky Dugan on September 2nd,
10 2009.

11      I guess my point is, Mr. Micallef, that, again, I am
12 repeating myself, but we are not going to get into the family
13 law dissolution here.  That's not the purpose of this trial.
14 And regardless -- I guess I am missing the point -- the Court
15 ordered -- a judge made a decision --

16      MR. MICALLEF:  Yes, Your Honor.

17      THE COURT:  -- that she should get the property.

18      MR. MICALLEF:  As a result of her request to be awarded
19 the property in full, as she set out in her property declaration
20 of how it should be allocated.  And that was filed with the
21 Court on July 22nd.  That document is then incorporated where
22 she is asking for that community property to be awarded to her.

23      THE COURT:  I don't know what the judge relied upon in
24 making that decision, neither do you.  Were you there?

25      MR. MICALLEF:  No, Your Honor, I was not.

26      THE COURT:  Okay.

27      MR. MICALLEF:  I believe it goes to her motive, her
28 bias --

209

1       THE COURT:  Well, you can ask her certainly was she
2  awarded the home by the judge.
3       MR. MICALLEF:  Yes.  And Your Honor, also she requested
4  to be ordered the home 100 percent by the Court.
5       THE COURT:  Right.
6       MR. MICALLEF:  And I certainly will intend to ask that.
7       THE COURT:  You can.  But we are not going to get into
8  any financial declarations or documents or anything, because,
9  honestly, I don't know what Judge Dugan relied upon or what
10 information was provided to her or what argument was made to
11 her.
12      MR. MICALLEF:  Your Honor, on some of these documents,
13 these documents were filed and submitted in pro per by
14 Miss Sanders.  So she is aware of the information contained
15 therein.
16      THE COURT:  That's all well and good.  I am concerned
17 about what Judge Dugan was aware of and what she relied upon in
18 making the order, and neither one of us know.  So how can we get
19 into that?
20      MR. MICALLEF:  Well, I guess we can't get into the
21 specifics of what the judge used as their determination.  We
22 already have the end result, which we know.
23      THE COURT:  Right.
24      MR. MICALLEF:  Whether she requested that she be
25 awarded these properties as separate, or how she listed them,
26 that's something that she has knowledge of.  Whether the Court
27 considered that, she still requested these things.
28      THE COURT:  Well, with respect to the property, the

1 | Beaumont home, yes, you can ask her if during the family law

2 | dissolution proceedings she requested that that home be awarded

3 | to her, and she can be asked if in fact did a judge make that

4 | order.  That's it.

5 |     MR. MICALLEF:  Your Honor, she also listed her

6 | San Bernardino home as her separate property in this particular

7 | instance.  That's part of the -- the dissolution proceedings

8 | there.

9 |     THE COURT:  It is her separate property.  It was

10 | purchased before the marriage.

11 |     MR. MICALLEF:  But again, Your Honor, it was being paid

12 | for during the time period while they were married.  It goes,

13 | again, to show bias in regards to that is the separate property.

14 |     THE COURT:  That's really reaching.  It's not a 20-year

15 | marriage here that we are talking about.

16 |     MR. MICALLEF:  I understand, Your Honor.  But she did

17 | have that home from -- while they were married from

18 | February 2008 until May of 2009.

19 |     THE COURT:  A little over a year?

20 |     MR. MICALLEF:  A little, yes.

21 |     Then, Your Honor, as part of her documentation that she

22 | filed with the Court to obtain the right to be awarded the

23 | property, she has asserted that Mr. Sanders committed a fraud.

24 |     MS. DITTRICH:  Do you have any proof otherwise?  I

25 | mean, you are just -- that's my --

26 |     MR. MICALLEF:  She filed --

27 |     THE COURT:  Again, we are -- folks, we are not going to

28 | litigate the family law matter.  I don't care what she claimed.

1  I mean, look, in family law court, people claim all kinds of
2  things.
3          MR. MICALLEF:  But, Your Honor, these are statements
4  that were submitted to the Court under penalty of perjury that
5  were filed by Miss Sanders in pro per.  So these allegations are
6  something that she is alleging under penalty of perjury goes to
7  her veracity, her truth.
8          THE COURT:  Well, it may well -- I understand your
9  point as far as impeachment is concerned of her.  But it seems
10 under Evidence Code Section 352 that we are really going far
11 afield here.  It's time-consuming.  It's not sufficiently
12 probative.  You know, we are not going to -- I keep repeating
13 myself, but we are not going to relitigate the family law court
14 issues.
15         MR. MICALLEF:  I don't -- you know, if I may be heard,
16 I don't wish to relitigate the family law issues.  I simply want
17 to point out that documents that point directly towards
18 Miss Sanders' veracity for truthfulness, which a significant
19 part of this trial and the evidence presented is based upon her
20 testimony and her veracity for truthfulness, based on the lack
21 of documentation as far as medical records and the allegations
22 that she has made numerous allegations with no other witnesses
23 besides herself, statements that Mr. Sanders allegedly made,
24 things that were allegedly done.
25         So her veracity for truth I believe is paramount in
26 this particular instance in whether she is a credible person.  I
27 believe it's highly relevant that the jury be advised of the
28 motive, how this timeline was formed from where this incident

1 started to go s          --

2          THE CO\          And I am going to allow you to ask those

3 questions.

4          MR. MICALLEF:   Thank you.   Well, my question --

5          THE COURT:   I think you can fully cross-examine her and

6 ask her about her motivation.   I am allowing you to do that.

7          MR. MICALLEF:   As far as if I have to impeach her with

8 this documentation, Your Honor, I guess that's my issue.

9          THE COURT:   Impeach her in what respect with respect to

10 which specific document on which specific issue?

11          MR. MICALLEF:   If I ask her, say, for example,

12 "Miss Sanders, isn't it true that you requested that the

13 Beaumont residence be awarded to you 100 percent?"   And if she

14 says no, then --

15          THE COURT:   All right.   That's another matter.   I have

16 already said you can ask her that question.

17          MR. MICALLEF:   Then I will ask for a sidebar if we get

18 to an issue.

19          THE COURT:   Right.   But we are not going to get to

20 every specific allegation in the family law matter unless it

21 relates to maybe the TRO that she filed, or the declaration that

22 may be inconsistent with what she is testifying to.   That's all

23 relevant and pertinent.   And you can use those documents to

24 impeach her.

25          But as far as some of this other stuff, you know, the

26 financial declaration, and how much money she makes, and what

27 about her San Bernardino property, all of that is not

28 sufficiently relevant to this matter, including her credibility.

213

1 I think you have ample information to work with to ask her the
2 questions that you need to ask her on cross-examination.

3      MS. DITTRICH:  Your Honor, can I just have some
4 clarification with regards to what he is going to be allowed to
5 inquire about?  He is going to be able to ask her if she filed
6 for 100 percent of the house, and it was awarded to her?

7      THE COURT:  Right.

8      MS. DITTRICH:  Okay.

9      MR. MICALLEF:  Also, the nature of how she obtained
10 that through a default.

11      THE COURT:  No.  She obtained it by a judge making a
12 decision, awarding it to her.

13      MR. MICALLEF:  Based on an entry of default, Your
14 Honor.

15      MS. DITTRICH:  See, Your Honor, I think the defense
16 is --

17      THE COURT:  No.  We are not going there, that's not
18 correct.  It was awarded to her pursuant to the marriage
19 settlement agreement that Judge Dugan signed.  That's my point,
20 Mr. Micallef.  I am not disputing that there may have been a
21 default entry judgment entered prior to that, or whatever.  I
22 don't care.

23      The bottom line is as we sit here today, a judge made
24 an order, right, wrong, or indifferent, awarding her that
25 property.  And so you are trying to attack her because a judge
26 made the order awarding it to her.  And we don't know what the
27 judge relied upon in making that ultimate decision.  And we are
28 not going to ask this jury to go there either.

1          MR. MICALLEF:  Even though, Your Honor, we are -- the

2    request for entry of default that showed, "Entered on July 22nd,

3    2009," to the Court?

4          THE COURT:  No.  Because, like I said, even if a

5    default judgment was entered, the judge hearing this family law

6    matter made an order awarding it to her pursuant to the

7    settlement agreement.  So that doesn't become relevant anymore.

8    She was awarded the property by the judge.

9          MR. MICALLEF:  Your Honor, I would assert to the Court

10   that part of the mechanism to allow that was by making

11   allegations against Mr. Sanders and having him arrested.

12         THE COURT:  I don't think that, neither do you.  You

13   are speculating.  I don't know what Judge Dugan relied upon in

14   making that order, that ruling.  So how can we ask this jury to

15   speculate or conjecture in that regard?  I am not going to go

16   there.  I am not going to do that.  I don't think it's

17   appropriate nor fair.

18         I mean, if you have a document -- well, you can ask her

19   questions about trying to obtain the property as her sole

20   property.  That's already been brought up.  I mean, this whole

21   thing makes no sense to me, in any event, because while the

22   defense is claiming that she knows -- she is Machiavellian and

23   all this stuff, basically, right?  That's what you are claiming.

24         MR. MICALLEF:  She is certainly more sophisticated than

25   Mr. Sanders.

26         THE COURT:  Well, I don't know that either.  But in any

27   event, that's your argument or your position, but then the house

28   is put in his name.

1          MR. MICALLEF:  And she is aware of it at the time --

2          THE COURT:  That's what I am saying, it makes no sense.

3 If she wanted to get the house, why would she put it in his sole

4 name?  They are husband and wife.

5          MR. MICALLEF:  They are -- well, Your Honor, in

6 regards, I will inquire into that, why it was purchased like

7 that, again, goes to her --

8          THE COURT:  You can do that.  I am going to allow you

9 to do that.

10          MR. MICALLEF:  And then in regards to her turning

11 around and saying it was fraudulent --

12          THE COURT:  What was fraudulent?

13          MS. DITTRICH:  There hasn't been any evidence of that.

14          THE COURT:  What was fraudulent?

15          MR. MICALLEF:  Your Honor, Miss Sanders asserted to the

16 Court when she filed her documents in regards to -- she put a

17 lien on the house.  Part of her assertion that she filed with

18 the Court was a declaration that Mr. Sanders perpetrated a fraud

19 in obtaining the property in his own name as an unmarried man,

20 and as a result of that, he was trying to circumvent her

21 community property rights.

22          THE COURT:  Well, she does have a community property --

23 they purchased the home while they were married.

24          MR. MICALLEF:  I understand, Your Honor.  But it's,

25 again, towards her veracity that she is aware that the house is

26 being purchased in Mr. Sanders' name and then later on turns

27 around and says he perpetrated a fraud in doing so.  She

28 alleged -- she stated she put money down on the house.

*Ground one*

ORIGINAL

T. T.

P.P. 198-199

268

1    A.    That he could not keep them in the San Bernardino home,

2  that he would have to get rid of them.

3    Q.    Why did you say that?

4    A.    Because I had children, and I didn't want anything to

5  do with guns.

6    Q.    Okay.  After you said that to him, what did he do?

7    A.    He said that he would get rid of them.

8    Q.    After that incident in the Beaumont house, did you see

9  those guns another time?

10    A.    I saw the -- the gun, the gun that you have right

11  there, I saw it.  Mr. Sanders wanted to shoot that gun on

12  New Year's.

13    Q.    What year in New Year's did he want to shoot it?

14    A.    It was 2008 New Year's Eve.

15    Q.    So December 31st, 2008?

16    A.    Yes.

17    Q.    Okay.  How did he -- how did that come about?  What did

18  he say to you?

19    A.    We were just watching movies on New Year's Eve.  And

20  he -- he said, you know, "I want to shoot my gun."

21       I said, "You know, you can't shoot your gun.  I have

22  apartments behind me."  I said, "You can't shoot anything here."

23       And he said, "Well, I will shoot it into the floor."

24       I said, "No, you can't shoot it into the floor.  I have

25  a sprinkler system.  You can't shoot the gun here, period.  I

26  thought you said you were going to get rid of them."

27       He said, "Well, I was" --

28       MR. MICALLEF:  Objection.  Narrative, Your Honor.

1          THE COURT:  Sustained.

2      Q.   (BY MS. DITTRICH)  After you told him he couldn't shoot

3  them in the sky or onto the ground, what did he say?

4      A.   We got into an argument.  And I went -- I went to go to

5  sleep for the night.

6      Q.   Okay.  When you were sleeping, did you hear anything?

7      A.   I heard a big blast.

8      Q.   What did you do?

9      A.   I woke up.  And he ran into the room holding his hand

10  and saying, "Oh, shit, oh, shit."

11      Q.   And what did you see on his hand?

12      A.   He was bleeding all over his hand.

13      Q.   Okay.  Did you also see anything about the gun that

14  night?

15          MR. MICALLEF:  Objection.  Leading.

16          THE COURT:  Overruled.

17          THE WITNESS:  I did not.

18      Q.   (BY MS. DITTRICH)  Later, did you see anything about

19  the gun?

20      A.   I saw that -- I didn't see the gun after that.  I just

21  saw -- he explained to me that the gun had broke and went into

22  his hand.

23          MR. MICALLEF:  Objection.  Calls for speculation.

24          THE COURT:  Overruled.

25          MS. DITTRICH:  May I have just one moment, Your Honor?

26          THE COURT:  Yes.

27          MS. DITTRICH:  Thank you.

28      Q.   (BY MS. DITTRICH)  Prior to finding this gun on the

1  shotgun; correct?

2      A.    Correct.

3      Q.    Then you physically placed it into a bag; correct?

4      A.    Correct.

5      Q.    And you took the ammunition that you found and placed

6  that ammunition into a bag; correct?

7      A.    Correct.

8      Q.    When you found the shotgun up on the shelf on May 20th,

9  2009, why didn't you just call the police and have them take it

10 down?

11     A.    I didn't think to do that at the time.

12     Q.    Now, you alleged earlier that Mr. Sanders -- you had

13 seen him previously with the shotgun at your other residence,

14 and Mr. Sanders had allegedly wanted to shoot the gun outside;

15 correct?

16     A.    Correct.

17     Q.    And it was your testimony that as a result of shooting

18 the shotgun that Mr. Sanders allegedly hurt his hand; correct?

19     A.    Correct.

20     Q.    Outside of your testimony, do you have any other proof

21 of that?

22         MS. DITTRICH:  Objection.  Relevance.

23         THE COURT:  Overruled.

24         THE WITNESS:  Besides -- no, unless we get -- look at

25 his hands right now.

26     Q.    (BY MR. MICALLEF)  So now, you also testified that

27 specifically on mid-April when Mr. Sanders came home early in

28 the morning, you questioned him in regards to his whereabouts,

Ground one

ORIGINAL

T. T.

381-386

1 specific examples.

2       MS. DITTRICH:  Okay.

3       THE COURT:  That may assist in establishing the

4 requisite foundation or basis upon which to express that

5 opinion.  But I don't think it's a -- for my two court

6 reporters -- sine qua non, which is a Latin term, it's s-i-n-e,

7 q-u-a, n-o-n, which means a mandatory prerequisite.

8       MS. DITTRICH:  Okay.

9       THE COURT:  I don't think that's what Evidence Code

10 Section 1103 requires.  But it does require a certain

11 foundational basis, which would allow someone to express that

12 type of opinion.

13       I mean, anyone just can't come in and testify to the

14 jury as to someone's character or veracity without having

15 sufficient foundation.  So you are going to have to provide me

16 with a lot of specific information.  And we may even have to

17 have a 402 hearing with Miss Shotlow before I am going to allow

18 her to testify in front of the jury and just state whatever she

19 wants to state in that regard.

20       And obviously you won't know that specifically until

21 you have a chance to speak to her at greater length,

22 Mr. Micallef.

23       MR. MICALLEF:  Thank you, Your Honor.

24       THE COURT:  Okay.

25       MR. MICALLEF:  There was one last issue that was

26 brought to my attention this morning, Your Honor.

27       The prosecution intends to want to take photographs of

28 Mr. Sanders' hand as part of their case to try to establish that

1 a scar that he has on his hand is subject to the testimony.

2 What I would object to in this particular instance is that the

3 complaining witness testified that Mr. Sanders allegedly had a

4 cast, allegedly injured his hand.

5          MS. DITTRICH:  No.

6          THE COURT:  No, she didn't.  She testified that he

7 injured his hand.

8          MR. MICALLEF:  Excuse me, that he injured his hand.

9 Then in regards to if Mr. Sanders has any scars on his hand,

10 that now puts the defense in a situation where we have to try to

11 now prove his innocence, based on where he actually obtained

12 that or what medical facility actually did that.

13          THE COURT:  That may be true.  That may be true.

14          MR. MICALLEF:  Within these time parameters, Your

15 Honor, with this being brought up at this time, I would ask the

16 Court, then, for leeway so I could obtain that authorization to

17 go to the medical facilities.  I understand we will be dark on

18 Friday.  But if we may be closing today, that puts us in a dire

19 predicament to be able to -- this is a crucial piece of

20 evidence.

21          THE COURT:  Go to what medical facilities?

22          MR. MICALLEF:  If Mr. Sanders has had medical

23 procedures on his hand that are being alleged to be related to

24 this incident, I would need to get the records showing where

25 they were actually from.

26          THE COURT:  What are we talking about?  Do the records

27 exist?

28          MR. MICALLEF:  Yes.

1          THE COURT:  So you have that information from your
2   client right now?
3          MR. MICALLEF:  I -- at this point, I just found out the
4   photographs are going to be taken this morning.
5          THE COURT:  No, no.  But the testimony, we talked about
6   this a few days ago, the fact that he was injured from his hand,
7   and that he may have gone to some hospital, and the DA was
8   sending out their investigator to see if records existed from
9   that facility.
10          MR. MICALLEF:  And they found no records from that
11  facility.
12          THE COURT:  Okay.
13          MR. MICALLEF:  But that's not the facility where he
14  actually had the procedure or relationship to the injury that he
15  has.
16          THE COURT:  That may well be.  But the point is you
17  were aware of the issue a few days ago regarding Miss Sanders'
18  testimony that she saw the defendant with a gun on New Year's
19  Eve, 2008.  He shot it in the backyard, came back into the
20  house, told her that he broke -- or something happened with the
21  mechanism on the weapon, hurt his hand, and it was bleeding.
22  That's the state of the evidence right now, at least as far as
23  the jury is concerned.
24          MR. MICALLEF:  Correct.  But there is no mention of any
25  photographic proof or evidence being obtained of his person.
26          THE COURT:  All right.  What if the DA asks, "Hey, I
27  want the jury to take a look at his hand"?  It's nontestimonial
28  evidence.  She -- Miss Sanders testified when you were

383

1   ~~cross-examining her, she said, "Let's look at his hand," didn't~~
2   ~~she.~~

3            MR. MICALLEF:  Yes, Your Honor.

4            THE COURT:  Okay.  What if the DA asked, "Hey, I want

5   the jury to see his hand," aren't they entitled to do that?

6            MR. MICALLEF:  I would assert no, Your Honor.

7            THE COURT:  Well, you inquired in that area on

8   cross-examination.  You were made aware of it a few days ago

9   that it was an issue.

10           MR. MICALLEF:  Well, Your Honor when I was made aware

11  of this, first of all I was made aware of it in the morning.

12  The assertion that was made to me was that the prosecution was

13  going to SDT records and that later in the afternoon --

14           THE COURT:  They were attempting to.

15           MR. MICALLEF:  Well, then later in the afternoon we

16  were going to follow up in regards to whether those are actually

17  going to be obtained and what the progress was.

18           THE COURT:  Correct.

19           MR. MICALLEF:  Then I found out subsequent to that time

20  that they were not going to make any effort to obtain the

21  records, because they could not find any.

22           THE COURT:  Well, there is a difference between not

23  making any effort to try and obtain them and them not existing.

24           MR. MICALLEF:  They did not exist.  Excuse me if I

25  misspoke.

26           THE COURT:  All right.

27           MS. DITTRICH:  I told defense counsel informally in the

28  afternoon, because we didn't address it on the record, that

1  there were no records found at Arrowhead Regional Center.  That

2  I did have the officer go out there with an SDT, talk to the

3  staff, and they said that he was visiting there at another time,

4  but not at that time.  So we didn't have any medical records

5  with regards to a hand injury at that location.

6       THE COURT:  We are talking about a specific time frame.

7  It's got to be December 31st or January 1st or something right

8  around that time frame.

9       MR. MICALLEF:  Right.

10      THE COURT:  All right.  So if he went to a hospital --

11      MR. MICALLEF:  Prior to that time.

12      THE COURT:  -- prior to that time?

13      MR. MICALLEF:  Yes, Your Honor.

14      THE COURT:  All right.  Then go subpoena those records.

15      MR. MICALLEF:  All right.  Then --

16      THE COURT:  Or subpoena -- serve a personal subpoena on

17 the custodian of records or the treating physician or whoever he

18 saw.

19      MR. MICALLEF:  I will do that.  I have to call my

20 investigator.

21      THE COURT:  I understand.  I will give you time this

22 morning to do that.

23      MR. MICALLEF:  Thank you.  If I could -- could I have

24 time to do that right now?  I know we are trying to get Officer

25 Peats out of here.  I don't know if the Court would be inclined

26 to hear his testimony, excuse him --

27      THE COURT:  I am assuming the conversation is only

28 going to take a few minutes.

1          MR. MICALLEF:  It's not going to take long on my part.

2 He would like to leave at 10:00 a.m.

3          THE COURT:  I would like to leave at 10:00 a.m., too.

4          MR. MICALLEF:  That's fine.  If I could be given an

5 opportunity to speak with Mr. Sanders, then contact the

6 investigator who is in the training, but I can have him do this.

7          THE COURT:  Okay.

8          MS. DITTRICH:  Then, Your Honor, with the Court's

9 permission, while counsel is doing that, I am going to ask

10 Officer Ditty to go ahead and photograph the defendant's hands

11 so I can print them for when he testifies.

12          THE COURT:  All right.

13          MS. DITTRICH:  Thank you.

14          MR. MICALLEF:  Your Honor, for the record, I will

15 object to the photographs being taken of Mr. Sanders' hand.

16          THE COURT:  Again, it's nontestimonial evidence.  He

17 doesn't have a right to object.  It's the same as taking a blood

18 sample or a saliva sample or a DNA sample or a hair sample or

19 anything else.

20          MR. MICALLEF:  I would argue for the Court it is

21 somewhat different in his -- it's like a tattoo, or it's not

22 like a fingerprint or your blood, things of this nature.

23          THE COURT:  Very similar to a tattoo; right?  What if a

24 witness testified, "Well, the perpetrator had this specific

25 scar, this specific tattoo on his body," and in fact the suspect

26 or the defendant did, aren't the People allowed to photograph

27 that evidence and show it to the jury?  I think so.

28          MR. MICALLEF:  Just noting my objection.

Groundone   Copy

T. T.
218-220

1          THE COURT:  I don't know what you are talking about.

2          MS. DITTRICH:  I know.  Because it hasn't been -- I

3     just -- from what defense counsel has represented, that that

4     seems like what he wants to inquire about, and I just want to

5     bring that up.

6          THE COURT:  Well, but I have no clue what you are

7     talking about or referring to.  Fraud in what suspect?

8          MS. DITTRICH:  He has a conviction for --

9          THE COURT:  I know he has -- regardless of what his

10    conviction is for, you are saying, Miss Dittrich, that the

11    defense is going to claim that she committed fraud?

12         MS. DITTRICH:  No.  That she said the defendant was

13    fraudulent in filling out their paperwork to obtain the home.

14    Because as the Court knows, the defendant told the victim he was

15    a truck driver and he was trucking.  And then he used pay stubs

16    from this trucking job to get the house, which she later found

17    out through the divorce proceedings and by the bank that those

18    documents were all false.

19         So that is what she has got -- that's what he is

20    referring to when he says, oh, the victim is claiming that the

21    defendant bought the house under fraudulent circumstances.

22    That's where that is stemming from.  She did -- I don't have any

23    proof of that or --

24         THE COURT:  It seems like no one has much proof of

25    anything.

26         MR. MICALLEF:  Your Honor, what I am referring to is

27    the declaration by Shikira Sanders filed with the Court on

28    May 15, 2009, that said -- excuse me.  I am sorry, the complaint

1  to quiet title, excuse me, from June 2nd, 2009, that was filed
2  by Miss Sanders, that said that the defendant committed an act
3  of what appears to be real estate fraud listing and
4  misrepresenting himself as an unmarried man and subsequently
5  qualifying for first-time home buyers benefits, and therefore
6  defraud the spouse of her entitlement to community property.
7  And she included a document within that paperwork that was
8  submitted to the Court showing to read, "Thellas Sanders, the
9  third, an unmarried man."  That was the document she submitted
10 to the Court.

11       THE COURT:  Okay.

12       MR. MICALLEF:  So that was the basis of the allegation
13 of fraud on her part against Mr. Sanders that he, in filling out
14 the paperwork and submitting it under his own name, doing it in
15 a fraudulent manner, it had nothing to do with any paycheck
16 stubs or anything of that nature.  Again, that was in the
17 document that she filed.

18       THE COURT:  All right.  But what is your point,
19 Mr. Micallef?

20       MR. MICALLEF:  I was just addressing what Miss Dittrich
21 said in regards to what Miss Sanders was alleging in regards to
22 fraud being perpetrated by Mr. Sanders.  She specified what that
23 was.

24       THE COURT:  Right.  What's your point in asking her
25 that?

26       MR. MICALLEF:  In regards to did she know about the
27 loan?  I am going to get into those things, as the Court stated
28 just a moment ago that you would allow me the leeway to ask

1 those questions, things of this nature.

2         THE COURT:  I said some questions, but I don't

3 understand what the relevance is of this specific document or

4 what she has set forth in the document.

5         MR. MICALLEF:  I guess I want to inquire into her

6 awareness of the paperwork being done by the -- with the loan.

7 That she -- my understanding is she actually submitted the

8 documents to the loan processer.  I am not going to ask her

9 about that, if I am allowed to by the Court.

10        And also ask her whether she put money down on this

11 house, if she was involved in the paperwork at all.  If she had

12 seen the paperwork while it was being filled out?  Did she

13 actually submit the paperwork?

14        THE COURT:  Well, it does appear in this document that

15 the complaint to quiet title that you have referred to she

16 claims that she put $8,000 down.  And it says, "See exhibit."

17        MR. MICALLEF:  Which is -- there wasn't an exhibit -- I

18 included the documentation that came -- that was imaged from the

19 court documents.

20        THE COURT:  Well, the exhibit may not have been imaged.

21 I don't know.  That's -- that's my problem, or one of my many

22 problems about getting into all this family law stuff is I don't

23 know what's in the family law file.  I don't know what was

24 presented to the judge.

25        All I know is this document that says, "Down payment of

26 $8,000, (See Exhibit 4.)"  It says, "Mortgage payments in the

27 sum of $8482.74, (See Exhibit 5.)"  And there is no exhibits

28 that you have provided us with.

Groundone       ORIGINAL

T. T.
554.560

1        THE WITNESS:  Remy Piibe, R-e-m-y, P-i-i-b-e.

2        THE CLERK:  Thank you.

3        THE COURT:  All right.  Mr. Micallef, you may inquire.

4        MR. MICALLEF:  Thank you.

5                    **REMY PIIBE,**

6    called as a witness by and on behalf of the Defendant, having

7    been first duly sworn, was examined and testified as follows:

8                **Direct Examination By Mr. Micallef**

9        Q.    Good morning, Dr. Piibe.

10       A.    Good morning.

11       Q.    Thank you for being here.

12             Could you please tell us what your current occupation

13   is.

14       A.    Emergency room physician.

15       Q.    And how long have you been an emergency room physician,

16   if you can tell us.

17       A.    About 20 years.

18       Q.    Okay.  Where are you currently employed?

19       A.    Arrowhead Hospital -- Arrowhead Regional Medical

20   Center.

21       Q.    What city and county is that located in?

22       A.    Colton, California, San Bernardino County.

23       Q.    All right.  How long have you been employed at the

24   Arrowhead Regional Medical Center?

25       A.    About 20 years.

26       Q.    Can you please describe for us what your duties are as

27   an emergency room doctor.

28       A.    I evaluate anybody that walks through the door that is

1  asking for emergency services.

2      Q.    Okay.  And do those services vary in nature?

3      A.    Yes.

4      Q.    Does your job involve examination of patients?

5      A.    Yes.

6      Q.    And when someone comes into the emergency room, do you

7  personally examine them?

8      A.    If they are assigned to me.

9      Q.    Do you recall if you were working in November of 2005,

10 on the 9th at Arrowhead Regional Medical Center?

11         THE COURT:   November, 2005?

12         MR. MICALLEF:  Excuse me, 2005, excuse me, yes.

13         THE COURT:  Okay.

14         THE WITNESS:  No.

15     Q.    (BY MR. MICALLEF)  Okay.  Prior to coming to testify

16 today, did you review any documents?

17     A.    Yes.

18     Q.    In reviewing those documents, did their review refresh

19 your recollection of whether you happened to be working on

20 November 9th, 2005?

21     A.    Yes.

22     Q.    And were you working on November 9th, 2005, at

23 Arrowhead Regional Medical Center?

24     A.    It appears so, yeah.

25     Q.    Do you recall seeing a patient by the name of Thellas

26 Sanders on November 9th, 2005?

27     A.    No.

28     Q.    Prior to testifying here today, did you review

1  documents in regards to patients that you may have seen on

2  November 9th, 2005?

3       A.   I don't understand the question.

4       Q.   Prior to testifying today, did you review any records

5  or documents in regards to seeing patients on November 9th,

6  2005?

7       A.   Just the paperwork that was given to me.

8       Q.   Okay.  Did you review that documentation?

9       A.   Yes.

10       Q.   Based upon your -- your review of that documentation,

11  does it appear that you saw a Mr. Thellas Sanders on

12  November 9th, 2005?

13       A.   Yes.

14       Q.   Okay.  Without getting specific as to the cause of what

15  you examined Mr. Sanders for, do you recall what you saw him

16  for?

17            MS. DITTRICH:  Objection.  Lack of foundation.

18            THE COURT:  Overruled.  You can answer.

19            THE WITNESS:  Do I recall before you gave me the

20  paperwork or after?

21       Q.   (BY MR. MICALLEF)  Well, before reading the paperwork,

22  do you have an independent recollection?

23       A.   No.

24       Q.   After reading the paperwork, is your recollection

25  refreshed of what you saw Mr. Sanders for?

26       A.   No.

27       Q.   In reviewing the paperwork that you have before you, do

28  you recognize your writing on any of those documents?

1    A.   Yes.

2    Q.   And in reviewing the documents that you recognize your

3 writing, isn't it true that those documents are dated

4 November 9th, 2005?

5    A.   Yes.

6    Q.   And in reviewing those documents from November 9th,

7 2005, can you ascertain approximately what time you saw

8 Mr. Sanders on November 9th?

9    A.   I wrote down 3:00.

10   Q.   Okay.  Now, when you examined Mr. Sanders, do you know

11 the nature of the injury that he had when you examined him?

12   A.   He presented for a wound check --

13   Q.   Okay.

14   A.   -- on the hand.

15   Q.   All right.  Do you recall which hand it was?

16   A.   The nursing notes say --

17       MS. DITTRICH:  Objection.  Hearsay, Your Honor.

18       THE COURT:  Sustained.

19       MR. MICALLEF:  Okay.

20   Q.   (BY MR. MICALLEF)  Without -- let me ask you, do you

21 have an independent recollection of which hand it was?

22   A.   No.

23   Q.   Okay.  Would reviewing the documentation refresh your

24 recollection as to which hand it was?

25   A.   Yes.

26       MR. MICALLEF:  With the Court's permission?

27       THE COURT:  Go ahead.

28   Q.   (BY MR. MICALLEF)  You may review the documents to see

1 if your recollection is refreshed.  After refreshing your

2 recollection, put the document down, then let me know you are

3 ready.

4      A.   ~~Well, my documentation says the right hand~~.

5      Q.   What I am asking you, sir, is just if you look at the

6 documentation, in reviewing it is your recollection refreshed?

7      A.   No.

8      Q.   When you take -- when you generally see clients -- see

9 patients, do you make notations in your notes -- excuse me, do

10 you make notations into certain documents in regards to what you

11 are examining that person for?

12     A.   Well, the ER record.

13     Q.   So you make a record, essentially, in general practice

14 as you examine someone, you mark down what you observed;

15 correct?

16     A.   Yes.

17     Q.   Okay.  And did you do that on this date on

18 November 9th, 2005, that you can tell?

19     A.   Yes.

20     Q.   Now, you stated earlier that when you examined

21 Mr. Sanders for a wound check, do you recall if that wound had

22 sutures involved or not?

23          MS. DITTRICH:  Objection.  Leading.

24          THE COURT:  Overruled.

25          THE WITNESS:  I do not.

26     Q.   (BY MR. MICALLEF)  Would it refresh your recollection

27 to review the documentation as to whether the wound check

28 involved sutures or not?

1     A.    My documentation doesn't state if there was sutures or

2  not.

3     Q.    My question, sir, if you reviewed the documentation

4  that you have there, would it refresh your recollection as to

5  whether there was sutures present or not?

6     A.    No..

7     Q.    Now, when you are noting -- what form do you generally

8  use to write down your observations when you see somebody in the

9  emergency room?

10     A.    Handwriting.

11     Q.    Okay.  Is there a specific form then at the hospital

12  that you are provided to utilize when you write down your

13  observations?

14     A.    I have an emergency room record.

15     Q.    Okay.  Now, in your review of Mr. Sanders' wound check,

16  did you make any notations as to the size of the wound that you

17  were examining?

18     A.    I did not.

19     Q.    Did you make any notation as to when Mr. Sanders

20  allegedly received this injury?

21     A.    I wrote down two days ago -- two days prior.

22     Q..    When you were examining -- is it typical when you

23  examine the patient where someone is coming in for a follow-up,

24  do you examine the initial -- or excuse me, do you observe or

25  look at the initial examination report?

26     A.    No.

27     Q.    So when you see someone for a follow-up, is it your

28  typical practice to not look at what the person who saw them

1  before did?

2      A.    It -- at that time in 2005, it wouldn't have been

3  available.

4      Q.    So is it your testimony that when you see someone back

5  in 2005, they didn't have a chart that had their prior

6  examination?

7      A.    Correct.

8      Q.    Now, on your emergency room notation, your paperwork

9  that you have, you list the location of where you see the wound;

10 correct?

11     A.    Yes.

12     Q.    And that would generally be located on the physical

13 examination portion of that report; correct?

14     A.    Yes.

15     Q.    And based upon that, the examination that you performed

16 on Mr. Sanders on November 9th, 2005, where did that examination

17 involve a wound?

18     A.    I wrote down, "Wound, right palm."

19     Q.    And then also a little bit further down on that

20 document, you have an initial impression that you get in regards

21 to examining a particular wound or injury; correct?

22     A.    Yes.

23     Q.    And in doing so, you formed an opinion in regards to

24 what you believed the source of that injury was?

25           MS. DITTRICH:  Objection.  Hearsay.

26           THE COURT:  Sustained.

27     Q.    (BY MR. MICALLEF)   Then you also have an initial plan

28 that you formulate in regards to what you recommend to the

ORIGINAL

# Ground 2

# Supporting Evidence

ORIGINAL

# Ground Two

T. T.

pp 113

T. T. 739-742

1  the application number.

2      Q.    Do you recognize this document?

3      A.    Yes.

4      Q.    What would you commonly describe it as?

5      A.    My marriage certificate.

6      Q.    And this is showing your marriage to the defendant?

7      A.    Yes.

8      Q.    Okay.  After you married the defendant -- well, let me

9  ask you this:  During your dating period from November of '06

10 until February, was the defendant employed?

11         MR. MICALLEF:  Objection.  Relevance.

12         THE COURT:  Overruled.

13     Q.    (BY MS. DITTRICH)  You can answer.

14     A.    Yes, to my knowledge.

15     Q.    What was he employed doing?

16     A.    He was a truck driver.

17     Q.    Did you share finances while you were dating?

18     A.    No.

19     Q.    Did he have access to your checking account?

20     A.    No.

21     Q.    Did you have any access to his checking account, if he

22 had any?

23     A.    No.

24     Q.    No?

25     A.    No.

26     Q.    Okay.  You said while you were dating you were living

27 in San Bernardino?

28     A.    Yes.

1       Well, Mr. Sanders, you always have that option or that

2 choice.  That's up to you.

3       THE DEFENDANT:  Your Honor, she worded that wrong.

4 There was a lot of things that I said to her that were not in

5 the report.  And she -- that's -- I told her that I didn't take

6 the stand because of my past.

7       THE COURT:  All right.  Well, that makes sense.

8       THE DEFENDANT:  That's what I said.

9       THE COURT:  All right.  And then, basically in the

10 report, it's consistent with your position at trial, which was

11 basically none of this happened.

12      And again, at the bottom of page 8 in the probation

13 report, the defendant -- I mean, the probation officer indicates

14 that when she spoke to Mr. Sanders, you indicated that you

15 needed counseling, not incarceration.  And I guess my question

16 or response to that would be, well, if you are denying that you

17 did anything wrong, then why would you need counseling?

18       THE DEFENDANT:  I am glad you asked me that question,

19 Your Honor.

20       THE COURT:  You don't need to respond.  If you want to,

21 that's fine --

22       THE DEFENDANT:  I want to.

23       THE COURT:  -- I am willing to hear from you.  It was

24 just a question I had.

25      ~~THE DEFENDANT:  Because, you know what, it seems like~~

26 ~~right now, it's -- Your Honor, I am the victim also.  And it was~~

27 ~~testimony from that young lady, for instance, with the scar on~~

28 ~~my hand, she testified that it happened in '08, '09.  My~~

739

1 physician told the Court it happened in '05.

2       The officer testified, for instance, that that water

3 that was on her vehicle, she said that she didn't do that.  And

4 it's so many other things that were heard on that stand.  And

5 nobody is coming in as a referee to stop this young lady from

6 lying.  Nobody is saying nothing.  That young lady committed

7 perjury several times on that stand and it's gone upon closed

8 ears.

9       And I don't understand how -- yes, I do need

10 counseling, because I am affected right now from this young

11 lady's testimony, this whole case is strictly on her testimony,

12 and strictly on hearsay.  There is no evidence or anything.

13       I even have a report from the Southwest Detention

14 Center from the Riverside County Sheriff's that said this young

15 lady lied on me.  She called the county jail and said that I

16 threatened her life.  And I have been charged with terrorist

17 threats for threatening her life.  And you did not allow that

18 into evidence.

19       When -- you know, Your Honor, the sheriffs aren't going

20 to lie.  What better witnesses do I have than the Riverside

21 County Sheriff?

22       THE COURT:  Well, you know --

23       THE DEFENDANT:  She was sitting there and lying to the

24 sheriffs, then, yeah, she will lie to the Beaumont Police

25 Department.  That's what she's doing because she's angry.  And

26 Your Honor, I am in custody doing time.  She is so bored at

27 midnight that she has got to call the county jail.  She has

28 nothing else to do but lie on me.

1       THE COURT:  There is no question she is angry.  And
2 this young lady you are referring to was your wife at the time,
3 someone you married.

4       THE DEFENDANT:  Yes, sir.

5       THE COURT:  Why was she upset, Mr. Sanders?

6       THE DEFENDANT:  Because I cheated on her.  I did wrong
7 by her, I admit that I was wrong.

8       THE COURT:  You weren't truthful with her about having
9 a child by another woman.

10       THE DEFENDANT:  Yes, sir, I admit that.

11       THE COURT:  Okay.

12       THE DEFENDANT:  ~~There is a lot of things that I did~~
13 ~~that I regret, Your Honor.  But I don't deserve being lied about~~
14 ~~and being brought to jail, and having police looking at my~~
15 ~~behind for cell phones.  Because that's what happened.~~
16 ~~And no one is doing anything about this.  She committed~~
17 ~~perjury right in front of you about this seat.  My physician~~
18 ~~testified it happened in '05.  Nobody said nothing about that.~~

19       THE COURT:  Ultimately that's up to the jury to decide
20 the credibility of witnesses.

21 ~~THE DEFENDANT:  But perjury is against the law, Your~~
22 ~~Honor.  She broke the law.  And nobody filed on her about that.~~
23 ~~And she lied to the jury, she will lie to everybody else.  And~~
24 ~~nobody said nothing.~~
25 ~~Your Honor, I haven't been in trouble in close to seven~~
26 ~~years.~~
27 ~~THE COURT:  That's true.~~
28 ~~THE DEFENDANT:  You know, so in the things that I did~~

1 ~~in my past, I have one violent case in 1993. I am not saying~~

2 ~~I am not downplaying that violence, because I was wrong. I did~~

3 ~~that, Your Honor. But I have come a long way in my life. I~~

4 ~~raised her children, I clothed her children, I fed her children~~.

5     THE COURT: You know, Mr. Sanders, even after that

6 violent offense in 1993, you were sent to prison two more times

7 thereafter.

8     ~~THE DEFENDANT: I understand that, Your Honor. But it~~

9 ~~wasn't violence.~~

10     ~~THE COURT: Well, correct. Well, one was for~~

11 ~~possession of a dangerous or deadly weapon~~.

12     But nonetheless, you know, we hope that when someone

13 gets sent to prison they get the message and they don't repeat

14 or reoffend. And you have done that continually over the past

15 15 years.

16     THE DEFENDANT: ~~Your Honor, but I have since the last~~

17 ~~close to seven years shown you that I have learned something. I~~

18 ~~am not saying that I don't deserve some type of punishment. But~~

19 ~~this is extreme. This is a woman that is scorned, she is upset.~~

20 ~~And it's not impossible for her to lie, because she is showing~~

21 ~~everybody that she can lie.~~

22     THE COURT: Well, there is a phrase in history that

23 talks about a woman scorned.

24     THE DEFENDANT: I understand.

25     THE COURT: But I am not going to go there.

26     In any event, I am going to deny probation, I am going

27 to impose the midterm.

28     THE DEFENDANT: I would like to read this letter also,

ORIGINAL

10/06/2009  1353    JAIL INFORMATION MANAGEMENT SYSTEM     CD. M. Spiegler
CLASSIFICATION NOTES
BOOKING NUMBER: 200923877
NAME: SANDERS, THELLAS

---

CD. C. Garcia              8/03/2009  1702

---

SWDC PROP LOC#0315
Dep. B. Devey              8/03/2009  1857

---

CELL SEARCH: ▮▮▮▮▮▮▮▮▮▮▮  XTRA SHORTS, LOTS OF TORN SHEETS FOUND
IN COMMON AREAS OF CELL. DM TO FOLLOW.
Dep. L. Amador             8/07/2009  0132

---

ON TODAYS DATE ABOUT 2330 HRS, CLASSIFICATION RECEIVED A CALL FROM SHAKIRA
SANDERS STATING THAT I/M THELLAS SANDERS WAS MAKING THREATENING PHONE CALLS TO
HER. MS SANDERS STATED THAT I/M SANDERS HAD MADE A CALL ABOUT 2310 HRS
THREATENING HER LIFE. E POD WAS ON LOCK DOWN AT THE TIME OF THAT ALLEGED CALL
& PHONES HAD BEEN OFF SINCE ABOUT 2140 HRS. MS SANDERS ALLEGED THAT I/M SANDERS
HAD A CELL PHONE HIDDEN WITHIN HIS CELL. SUBSEQUENT SEARCH OF THE CELL & STRIP
SEARCH OF THE INMATE CAME UP NEGATIVE. THIS IS FOR INFO ONLY.
C.Cpl. A. Vernal           8/09/2009  0036

*[handwritten margin note: Terroist Threat Allegation The Reason I have Nurs HER Character Shows in this Document. SHE'S A HABITUAL LIAR]*

initial crt cloth.: blue shirt, multi tie, gray pants, blk shoes/socks
C.DepII S. Conilogue       9/18/2009  1542

---

new crt cloth: tan shirt, multi tie.
C.Dep R. Aceves            9/23/2009  1425
ACCESS TO SHOWER GIVEN, DAYROOM GIVEN.
Dep. L. Amador             9/23/2009  1920

---

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ I HAD TO
EXPLAINED TO HIM THE DIFFERENCE BETWEEN A "SHOWER & SHAVE" AND A "HAIRCUT,"
HE CONTINUED TO ARGUE THAT THERE'S NO DIFFERENCE. HAIRCUTS WILL BE ALLOWED
ON 09/24/09 IN HIS DAYROOM.
Dep. L. Amador             9/23/2009  2322

---

I/M was given access to the hair clippers. Per court order.
CD M. Coronel              10/05/2009  2121

---

Xfer in from SWDC for trial, 23C8 pending GP L5 bed.
CD P. Urteaga              10/06/2009  0639

---

Housed 4A30 for GP L5 housing.
CD P. Urteaga              10/06/2009  1032

---

1    MR. MICALLEF:  Well, there is a number of things, Your
2 Honor.  In regards to the witness, during the pendency of the
3 trial, we spoke with Shikira Sanders' sister -- I am sorry, last
4 name is Glasgow.

5    THE COURT:  Kariya, K-a-r-i-y-a.

6    MR. MICALLEF:  Yes.  And I went back there and spoke
7 with Miss Glasgow.  Miss Dittrich was present, as well as
8 Officer Ditty.  And she advised us that she actually received
9 what she believed was a phone call from Mr. Sanders while he was
10 in custody at the jail.  She spoke with the individual.  Shikira
11 Sanders did not speak with the individual on the phone.  But
12 Miss Glasgow believed and asserted that it was Mr. Sanders on
13 the phone with her.

14    Based on that, she told Shikira Sanders to call the
15 jail, and made a complaint that she was being called by
16 Mr. Sanders.  Subsequently, based on Shikira Sanders' phone call
17 to the jail, Mr. Sanders was on lockdown at that time.  The jail
18 staff went into his cell and performed a strip search seeking a
19 possible illegal cell phone, which was never found.

20    As far as -- I subpoenaed documents and I submitted
21 them as part of my exhibit list as I believe Z, which is the
22 jail class notes regarding a phone complaint for August 8th,
23 2009.  I subpoenaed those documents from the jail.  We received
24 an updated version or unredacted during the pendency of the
25 trial.  And those documents show that Shikira Sanders is the one
26 that called the jail in regards to this -- that complaint.

27    What I would be seeking to do potentially is
28 introducing the -- well, either asking Shikira Sanders, "Did you

1 call the jail in regards to complaining that Mr. Sanders

2 allegedly called you?"

3        And the documents were received via subpoena, and I

4 would offer them based on the business records exception that

5 there is -- they were provided to the Court via subpoena.

6 Miss Dittrich has a copy of them.  And the foundation would be

7 that they are a business record kept by the jail in regards to

8 these incidents, if Miss Sanders were to deny that she called

9 the jail, and made this complaint based on what her sister told

10 her.

11        And would it be necessary to have her sister testify

12 that, yes, she did indeed receive a phone call that she believed

13 to be Mr. Sanders, but subsequently had no way of confirming

14 that the complaint was made, irregardless.

15        THE COURT:  The People?

16        MS. DITTRICH:  Your Honor, first of all, I don't think

17 that this call on August 7th, 2009, is relevant to any of the

18 charges in the case.

19        THE COURT:  Neither do I.

20        MS. DITTRICH:  It's also disconnected, because in fact,

21 it was the victim's sister who answered the phone, said that it

22 was the defendant.  It's not Mrs. Sanders that is saying that it

23 was the defendant on the phone.  She is just taking her sister's

24 word.

25        Defense counsel didn't inquire to the victim during

26 direct -- or during his cross-examination of her about any of

27 this.  I don't see how it's related.

28        I don't -- I think that having the sister get up to say

1 that her -- the victim called the jail because she told her to

2 doesn't have anything to do with this case.  And I don't think

3 that it's proper for him to introduce the documents from the

4 jail without having someone come in and authenticate them.

5          THE COURT:  That's putting the cart before the horse.

6          How is this testimony or information relevant?

7          MR. MICALLEF:  I guess, Your Honor, it goes toward my

8 general theory of the bias on the part of Miss Sanders against

9 Mr. Sanders, that -- asserting that he is making phone calls

10 when he is in a position where he can't make phone calls, and --

11          THE COURT:  Sure he can make phone calls.  Inmates have

12 access to phones all the time, in the day rooms, unlimited

13 access.

14          MR. MICALLEF:  His access was limited at that time,

15 Your Honor, pursuant to documents.  He was on a lockdown.

16          THE COURT:  No.  Before she made the complaint, he was

17 on a lockdown?

18          MR. MICALLEF:  Yes, Your Honor.

19          THE COURT:  Well, who is going to testify to that?

20          MR. MICALLEF:  That's part of the documents, Your

21 Honor.

22          THE COURT:  Well, no.  I don't -- first of all, I don't

23 think it's even impeachment.  That's your issue, that's what you

24 are trying to show as a bias or to impeach the witness's

25 testimony.

26          But, I think the People raise a relevant point and that

27 is that Miss Sanders' sister is the one that actually took the

28 call and, right, wrong, or indifferent, Miss Sanders was acting

1 upon information provided to her -- to her by her sister.

2 Miss Sanders didn't take the call.  She doesn't know who was on

3 the phone.  And so you are trying to show her bias based upon

4 information her sister provided her.  Do you see my point?

5          MR. MICALLEF:  I understand where the Court is going.

6          THE COURT:  So I don't think it's relevant.  And even

7 if it is relevant, it's so remote and collateral, and under

8 Evidence Code Section 352, we are not going to go there, because

9 I think it would necessitate calling jail personnel, because the

10 class notes -- I haven't seen them, and that's another issue or

11 problem.  When someone subpoenas something, they are supposed to

12 come directly to the Court.  Counsel is not supposed to have

13 them.

14          MS. DITTRICH:  I don't know how defense got the first

15 copy that was redacted -- actually, I do know.

16          MR. MICALLEF:  It went to the Court, Your Honor.

17          THE COURT:  I have never seen them.  I never dealt with

18 them.

19          MR. MICALLEF:  Department 62, Your Honor, is where it

20 was subpoenaed to originally.

21          THE COURT:  Did Department 62, did that judge make an

22 order regarding those subpoenaed documents?

23          MR. MICALLEF:  They would be released for copying and

24 returned, Your Honor.  But that was at the time we were assigned

25 out.

26          THE COURT:  Okay.

27          MS. DITTRICH:  That was the redacted version.  Then

28 the -- the lieutenant from the sheriff's department came in and

1  gave us an unredacted version.

2          THE COURT:  I see.  All right.

3          But again, I think it would necessitate calling some

4  personnel from the jail to establish all of this information.

5  Even if they are business records, you still have to lay the

6  appropriate foundation for them to come in under the Evidence

7  Code.

8          So it's unduly time-consuming.  It's really remote and

9  collateral.  I don't even think it's appropriately impeachment

10 or bias evidence, because Miss Sanders isn't the one that took

11 the call.  She is relying upon information provided to her by

12 her sister.  And again, I don't think it's sufficiently

13 relevant.  And in weighing its probative value versus the undue

14 consumption of time and its collateral nature, I am not going to

15 allow it.

16         MR. MICALLEF:  All right.  Can I address one other

17 issue with the Court?

18         THE COURT:  Sure.

19         MR. MICALLEF:  Your Honor, in addition to that, the

20 Court made Miss Sanders subject to recall in regards to this

21 issue.  She has not been excused.

22         THE COURT:  That's correct.

23         MR. MICALLEF:  The two witnesses that I intend to call,

24 they -- I intend to introduce statements made by Miss Sanders

25 that I believe qualify under the hearsay exception as

26 contemporaneous or spontaneous declarations that go to

27 Miss Sanders' state of mind at the time of the statements.

28         I am addressing it with the Court now because there is

Copy/
original

Character
Reference
Letter

Ground ~~One~~
Two

**Perry L Fanning**
*Contract Investigator*



December 7, 2009

2171 Campus Dr
Ste 370
Irvine, CA 92612
**Cell:** 909.297.0599
**Fax:** 909.338.3098

**Web:** www.usis.com

To:     Paul E. Zellerbach
        The Honorable Presiding Judge
        Riverside Superior Court

From:   Perry L. Fanning
        Special Agent Supervisor (Retired)
        California Department Of Justice

Ref:    Thellas Sanders, Case Number #BAF006658

Subj:   Character Reference

Your Honor, this correspondence is submitted to the court as a character reference for Thellas Sanders, who is currently in trial for Domestic Violence (Spousal Abuse).

Sir, I have known Thellas Sanders and his family for two years and six months and I feel that I am qualified to render the following character reference on his behalf.

When I met Thellas, I found him to be a well disciplined, hard working and caring family man. I found this to be true also with his wife, whom he married shortly after I met him. Thellas took on a huge responsibility upon getting married, as he inherited three children his spouse had from a previous marriage and yet, he treated them as if they were his own. He would take them as well as his own daughter to school daily. He participated in school activities, attended their ceremonies, prepared their dinners etc. He provided them with a lot of his time when he was unemployed, because of the economy, and looking for employment. As a matter of fact he was so proficient at parenting his wife suggested he become a stay at home dad.

I found Thellas to be a quiet, trustworthy, kind considerate individual who was always ready to help family and friends. He was never disrespectful to his elders and tried hard to live a descent life. Although I have known Thellas only for a short period of time, I was very impressed with his level of concern and compassion for others. He never displayed a violent nature or tendency to me.

Thellas and I would have many conversations regarding his life and his goals. He took me into his confidence as a mentor and came to me when he needed guidance. I am therefore aware of the type of man he is and his character. In closing your honor, I believe in the final analysis justice will prevail in this matter, as I truly believe in God and our judicial process. I implore you to please consider this character reference in rendering your sentence on Thellas Sanders III.

Respectfully Submitted,

Perry L. Fanning
P.O. Box 2763
Crestline, Ca 92325

December 12, 2009

To: Honorable Paul E. Zellerback

Re: Thellas Sanders III – Case #BAF006658

Dear Your Honor,

I am the mother of Kailah Sanders. Thellas Sanders III is the father of my three year old daughter. I know Thellas to be a man who loves his child and is very involved in her life. Thellas has been responsible for picking our daughter up from school daily, helping her with her homework, and keeping her until I got off work. His involvement as a parent was a tremendous benefit to me and our daughter. Our daughter is very attached to her father and having a difficult time in his absence. Everyday she asks me, "Where is my daddy? Why isn't he calling me? Why isn't he picking me up?". I am sure you understand the impact that a father has on his child and since he was a part of her everyday life his absence is greatly affecting her. She has asked me if he doesn't love her anymore because he doesn't call her or visit her. Although I am explaining to her that he loves her and that she will see him again it's difficult to see her suffer at him not being around. It is difficult for a three year old to understand that the father she loves has just stopped seeing her.

Although our relationship ended he has continued to show respect towards me. In the ten years I've been acquainted with him I've known him to be respectful to his family and friends. He shows love and support for our daughter and a commitment to raising her. I am asking that as you consider sentencing that you would keep our daughter in mind. I am asking that you impose a sentence that would allow Thellas to quickly be reunited with his daughter.

Thankfully,

Anastacia Adams

909-222-4315

Michelle A. Adams
12720 Curtis & King Rd #A
Norwalk, CA 90650

7 December 2009

Re:  Character Reference – Thellas Sanders III

To whom it may concern,

I am writing on behalf of Thellas Sanders III who I've known for approximately 25 years. Mr. Sanders and my brother became friends when they were both approximately 10 years old. From the beginning of their friendship Thellas became an extended part of our family and we share very close ties. I consider him to be my brother. Throughout the years I have watched him growing up and observed his disappointments and triumphs.

Although Thellas has been in some situations in his past, he has worked diligently to redirect his life. He continually sought out employment to ensure that he was a self sufficient individual and could obtain his goals. I've known him to be a hard worker and to be committed to doing a good job. In his personal life he is a father who is involved. He takes pride in being supportive and available to his children. Thellas was very happy when he announced to us that he was getting married. He felt that his path was complete, he was marrying the lady he loved and he intended to purchase a home. I listened as he talked about his new wife and her children. He willingly helped with homework, picking up the children, and other duties of a husband.

I know Thellas to be a person who cares about others. When my mother was sick he not only visited but would call to check and see how she was doing. To this day he and my brother remain friends who are supportive of one another. To this day as far as we are concerned he remains one of the family. I see Thellas as a person who has arrived. He has overcome many challenges and is working on his future. He has many positive qualities that will help him in his future and his diligence is unmatched. Thellas is a friendly person, and a family man, and my family truly respects him.

Sincerely,

Michelle A Adams

Michelle A. Adams

December 14, 2009

To: Honorable Paul E. Zellerback

Re: Thellas Sanders III – Case #BAF006658

Dear Honorable Paul E. Zellerback:

I am writing this letter on behalf of my son Thellas Sanders III who is awaiting sentencing on January 8, 2010. First and foremost Your Honor I pray as you read this letter that you have been blessed with good health, the patience to read our letters with a tranquil heart, and clemency for our family when rendering down your decision. Your Honor I am aware of how you may view my son as a menace to this society given his past history along with today's events. I only wish we were given the opportunity to introduce to the court our exhibit of the noble side of Thellas.  Your Honor I view my son as upright not because of his outward appearances or idle words, but by his unwavering willingness to assist others in their time of need. I've always admired his loyalty, generosity, and commitment to family and friends.

I appeal to you for compassion for many reasons, but primarily due to my health issues. I have recently been diagnosed with stage 3½ colon cancer and given a 73% (5 years) survival rate following surgery and extensive chemotherapy which I am now enduring. I had two sons who would have supported me through this life shattering event. My first son Sgt. Travon Travis, 1st Battalion, 503rd Infantry Regiment (Airborne) who was killed in action in Afghanistan July 23, 2007, whom I love and admire with every fiber of my being.  My second son is Thellas who stands before you today awaiting sentencing.  I've always been able to rely on him to help in any family situation.  Even as we both grieved the loss of his brother he was my rock and was a support for me through that tough time. Now I have another tough time ahead of me and I know he would support me through this as well.   My treatment dosage is bi-weekly and very rigorous therefore my endurance level is very low.  I am unable to travel extended distances and I am respectfully requesting that you would consider my circumstances when rendering your decision.  I know the courts must be vigilant in their pursuit to eliminate crime where it exists, but I beseech you to please consider my appeal to you and the other reference letters when rendering your decision. I assure you a life lesson has been learned by Thellas throughout this process.

Respectfully Submitted,

Cheryl Thomas
Loving Mother

December 15, 2009

To: Honorable Judge

Re: Mr. Thellas Sanders III

Your honor, this letter is in reference to Mr. Thellas Sanders III. I am Charlette Tysen.

I have known Mr. Sanders since he was five years old. I have always known him to be a loving, caring, thoughtful, respectful and compassionate young man.

I have worked in the criminal justice system for over twenty five years. I am currently in the position of a Parole Agent III, supervisor for California Department of Corrections and Rehabilitation, Adult Parole.

I have witnessed Mr. Sanders with his family over the years. He has earnestly been an active part of his mother, his children and most recently his step-children's lives. He has assisted in being the primary care giver to his step-children, inclusive of attending school functions and meetings. He has assisted with the needs of the children who have special needs and disabilities. I have witnessed the bond he and his step children possessed; He is needed as a support system to his ill mother, his children.

It is my understanding that Mr. Sanders has been convicted of two felony charges. I am writing this letter to implore you to show some leniency in his sentencing. We are of the belief that Mr. Sanders can be a viable member to our society. An extensive prison commitment will not benefit him, his family or the community.

Thank you for your valuable time and consideration in this matter.

*Charlette Tysen*

Charlette Tysen
9610 South 4th Avenue
Inglewood, California 90305
(323) 779-5337 (Home)
(213) 309-7164 (Cell)

December13, 2009

To: Honorable Paul E. Zellerbach

Dear Your Honor:

     My name is Zakiya Hill, a friend of Thellas Sanders. I have known this young man all of my life. I am sad to see that he is in a situation that is a result of one big misunderstanding. Hopefully, I can share with you some things that you may not know about him. This young man that stands before you is a changed man. He is a father and a very good provider for his immediate and extended family. Before, his marriage to his wife, Shakira, he took a special interest in her three kids. He became a father figure to her children by assisting them with their homework, displaying appropriate social skills and establishing limits and boundaries that allowed the children to bring up their grades and to perform at their current academic level. This man married a woman with three kids, took them under his wing to raise them as his own, along with his own children. He worked many hours as a truck driver, providing for the needs of his family. Thellas has been very responsible and loving to his family since before he ever said "I do" to Shakira. It is my strong belief that he poses no threat to anyone in society. I want you to know that many untruths were reported and had his witnesses been able to testify you would have a completely different view of his character. Thellas is an upstanding young man and an asset to his family and friends. Please take my words into consideration when rendering your decision. Your Honor I respectfully submit my opinion of his character to you with highest regards.

If you have any questions I can be reached at 1327 W. 133rd Street, Los Angeles, CA 90222, or by phone at 310-885-5757. Thank you for your time.

ZakiyaHill

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Thellas Sanders

**(b)** County of Residence of First Listed Plaintiff **Beckham (OK)**
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Thellas Sanders
1605 E. Main St.
Sayre OK 73662
AC2804

DEFENDANTS
State of Calif.

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)
ProSe

FILING FEE PAID?
Yes   No

IFP MOTION FILED?
Yes   No

COPIES SENT TO
Court

FILED
SEP 0 4 2012
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY    DEPUTY

12 CV 2181 WQH NLS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff

x 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY**    **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane    ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability    ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander    ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine    **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability    ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle    ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability    ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury    ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY**   **CIVIL RIGHTS**   **PRISONER PETITIONS** | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting    ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment    **Habeas Corpus:** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations    x 530 General | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare    ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment    ☐ 540 Mandamus & Other | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other    ☐ 550 Civil Rights | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 555 Prison Condition | ☐ 463 Habeas Corpus - Alien Detainee | | |
| | ☐ 440 Other Civil Rights | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

x 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from another district (specify)    ☐ 6 Multidistrict Litigation    ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
**28:2254**
Brief description of cause:
**Petition for Writ of Habeas Corpus**

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions): JUDGE      DOCKET NUMBER

DATE
9/04/12

SIGNATURE OF ATTORNEY OF RECORD
SKHoestenbach

FOR OFFICE USE ONLY

RECEIPT #     AMOUNT     APPLYING IFP     JUDGE     MAG. JUDGE



T. Sanders. AC2804
1605 Sayre, OK. Main St.
Sayre, OK.        73662

Clerk of
U. S. District Court
Room 4290
880 front St.
San Diego, CA. 92101-8900

Confidential
"Legal Mail"



RECEIVED
SEP 04 2012
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                        DEPUTY

CONDITION
DIEGO, CA 92101